[No. 1683.]

## THE STATE OF NEVADA, EX REL. NEVADA TITLE GUARANTY AND TRUST COMPANY, A CORPORATION, RELATOR, *v.* PUDDY GRIMES, AS COUNTY RECORDER IN AND FOR THE COUNTY OF NYE, STATE OF NEVADA, RESPONDENT.

1. RECORDS—ACCESS TO—RIGHTS OF ABSTRACT COMPANIES. Under sections 2663, 2664, Comp. Laws, providing that every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate, or whereby any real estate may be affected, proved, acknowledged, certified, and recorded in the manner presented, "shall from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof, and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice," and under other statutes enumerated, as construed in connection with the common law, a corporation organized for the purpose of furnishing abstracts and guaranteeing titles may, free of charge, through its agents and employees, during regular business hours, inspect and make memoranda and copies of all files and records in the office of the county recorder, in so far as they relate to current transactions in which it is authorized or employed to make searches, furnish abstracts, or guarantee titles by persons having, or seeking to acquire, an interest in property; the examination to be made at such times and under such circumstances as will not prevent the recorder or his assistants from discharging their duties, nor interfere with the right of other persons to have access to the records.

2. SAME—COMPILING ABSTRACT BOOKS. Under the laws mentioned, relator has not the right to copy or inspect all records for the purpose of compiling an independent set of abstract books, covering all the property to which the records relate and for use in equipping an office in opposition to the recorder.

(Syllabus by the Court.)

ORIGINAL PROCEEDING. Petition by the State, on the relation of The Nevada Title Guaranty and Trust Company, for writ of *mandamus* to Puddy Grimes, County Recorder of the County of Nye. **Denied.**

The facts sufficiently appear in the opinion.

*George S. Green, Alfred Chartz,* and *T. A. A. Siegfriedt,* for Relator:

I. Moreover, it is well settled in law that, in the absence of a statute declaring the right of access and inspection, public records are no less subject to such inspection. As said in *Lum* v. *McCarty,* 39 N. J. Law, 289, by the court,

which was a case very similar to the one at bar, and in which there were provisions of statute declaring the right of public inspection of certain records, and silent as to others, "it is also suggested that the absence of any provision for access by the public to the records of judgments of the circuit court favors the charge (by the clerk) so far as the records of those judgments are concerned. The right of the public to free access to the records carries with it the right to search without charge for the privileges. Nor can a claim on the part of the clerk to fees for a search not made by himself · or his assistant in the records of the judgments of the circuit court in his office be justified by the fact that no special provision is made for access by the public to those records. They are no less free to the public by reason of the absence of a provision declaring the right. They are, in fact, public records, and are public property, kept in a public place, at the public expense, for the public benefit."

II. As we have said, the statutes of the State of Nevada are sufficient authority upon which the relator may base its claims to the right of free access and general inspection of all public records in the office of the respondent. However, independent of any statute declaring such right or inspection or requiring such record to be kept, the records of a public officer become such public records as are subject to the free and general inspection by the public. (*Brown* v. *Knapp*, 54 Mich. 132; *Coleman* v. *Commonwealth*, 25 Grat. Va. 881; *State* v. *Donovan*, 10 N. D. 209; *State* v. *Smith*, 74 Iowa, 583; *State* v. *Cummins*, 76 Iowa, 136; *Parsons* v. *Randolph*, 21 Mo. App. 359; *Nash* v. *Lathrop*, 142 Mass. 35; *Banks* v. *Manchester*, 23 Fed. 143; *Myers* v. *Callahan*, 20 Fed. 441; *Chase* v. *Sanborn*, 4 Cliff. 306; *Little* v. *Gould*, 2 Blatchf. 165; *Banks* v. *West Pub. Co.*, 27 Fed. 50; *Thompson* v. *Hoblitzelle*, 85 Mo. 624.) See, also, *Burton* v. *Tuite*, 78 Mich. 363, 80 Mich. 218; *Lum* v. *McCarty*, 39 N. J. Law, 286; *Aitcheson* v. *Huebner*, 90 Mich. 645; *Johnson* v. *Wakulla*, 28 Fla. 731, 733; *State* v. *Meeker*, 19 Neb. 106; *Speilman* v. *Flynn*, 19 Neb. 346.

III. It should be observed that inspection is only restricted to a particular proceeding where it is obtained by rule of the court; otherwise when obtained by *mandamus;*

and we have been unable to find any case whatsoever, English or American, in which an inspection was denied to any one who had a special interest in the subject-matter of the record, and we challenge counsel for the respondent to find any. The right of abstracters to examine and inspect all the public records was first denied in the case of *Webber* v. *Townley*, 43 Mich. 536, which stood as authority for that position for several years, and which was followed by several decisions in other states. The right was denied in that case, notwithstanding that the court said: "The object sought by the relators may be considered of such modern origin as not to have been contemplated or covered by the common-law authorities relating to the inspection of public records." However, in 1889, *Webber* v. *Townley* was considered by the same court in *Burton* v. *Tuite*, 78 Mich. 363, 80 Mich. 218, and expressly overruled. In that opinion the court said: "I cannot agree with the opinion of the court, or the reasons given for it, in *Webber* v. *Townley*, *supra*. I have a right, if I see fit, to examine the title to my neighbor's property, whether or not I have any interest in it, or intend ever to have. I also have the right to examine any title that I see fit, recorded in the public office, for the purpose of selling such information, if I desire. No one has ever disputed the right of a lawyer to enter the register's office and examine the title of his client to land as recorded, or the title of opponent of his client, and to charge his client for the information so obtained. This is done for private gain, as a part of the lawyer's daily business and by means of which, with others, he earns his bread. Upon what different footing can an abstracter—can Mr. Burton—be placed within the law, without giving the privilege to one man or class of men that is denied to another?" See authorities therein cited in case of *Burton* v. *Tuite*, 78 Mich. 363.

IV. The contention that a seeker after information in the county recorder's office, who makes his searches for himself, and who obtains his information without the aid of the recorder or his assistants, must, nevertheless, pay to the recorder the same fees which the recorder would be entitled

to collect, if he had been required to make the searches for the applicant, is a proposition which even in that' form is already one *reductio ad absurdum.* If it is not, it can easily be made so. In *Re Chambers,* 44 Fed. 786, the court held that "the fee attaches, not to the fact of a search, but to the fact that such search is made by the clerk on the requisition of another. It is his compensation for his services in actually making the search. It is proper to say that the court has been at some pains to ascertain the views entertained, and the practice that prevailed in this matter in other circuits and districts. Inquiries for this purpose extended to four circuits besides the eighth, and the replies show a substantial concensus of opinion and practice in harmony with the views here expressed."

V. Reference is here especially made to Warvelle on Abstracts (1892), chap. V, par. 3, p. 65. After considering the cases in which the right of title companies and abstracters had been denied, he says: "It is difficult, however, to reconcile the reasoning in some of the cases with the spirit and general policy of the law, or with the claims of business convenience. The great utility of the professional examiner is a recognized fact, and, with the constantly increasing complications of land titles, his assistants in their proper adjustment has, in many localities, become an absolute necessity.

VI. For consideration of the rights of the public in public offices in extreme cases, see *O'Hara* v. *King,* 52 Ill. 303; *Parsons* v. *Randolph,* 21 Mo. App. 353.

*William Forman,* for Respondent:

I. At common law the right to inspect public records, either in person or by an agent, was confined to those who had an interest in the subject-matter to which the record related. While it seems that a person seeking an inspection of public records must have such an interest as will enable him to maintain and defend an action for which the document can furnish evidence or necessary information, it is not necessary that a case be pending at the time, nor is it even essential that the interest of such person be private so that he can maintain an action or defense on his own personal

behalf; but it will be sufficient that he can properly act in some action in relation to the matter as the representative of the common or public right. (Ency. Law, 2d ed. vol. 24, p. 182; *Rex* v. *Merchant Tailors Co.*, 2 B. & Ad. 115; *Brewer* v. *Watson*, 71 Ala. 299; *Daily* v. *Dimock*, 55 Conn. 579; *State* v. *King*, 154 Ind. 621; *Cormack* v. *Wolcott*, 37 Kan. 391; *People* v. *Walker*, 9 Mich. 328; *People* v. *Cornell*, 35 How. 31; *Owens* v. *Woolridge*, 8 Pa. Dist. 305; *Caswell's Request*, 18 R. I. 835.)

II. The right to inspect public records is not absolute and unrestricted, but must be exercised subject to such reasonable restrictions as may be imposed by statute or by the custodian of the records. (*Stockman* v. *Brooks*, 17 Colo. 248; *Upton* v. *Catlin*, 17 Colo. 546; *Buck* v. *Collins*, 51 Ga. 395: *Day* v. *Button*, 96 Mich. 600; *Burton* v. *Tuite*, 78 Mich. 363; *Burton* v. *Reynolds*, 102 Mich. 55; *State* v. *Rachac*, 37 Minn. 372; *Hanson* v. *Eichstaedt*, 69 Wis. 538.)

III. The right of an abstracter or abstract company incorporated for the purpose of preparing abstracts from the various counties of the state does not seem to have ever been passed upon by the courts of this state, and there is no power conferred by statute directly authorizing the inspection of the public records and copying the same by such persons or corporations. In the absence of any statute authorizing the copying of the records by such a person or company the court must be governed by common-law rule in regard to the same. Section 3095, Comp. Laws, is as follows: "The common law of England, so far as it is not repugnant to or in conflict with the constitution and laws of the United States or the constitution and laws of this state shall be the rule of decision in all courts of this state." There are various statutes providing for the inspection of certain records by the public, but no statute conferring upon an individual the right to inspect, search, or copy the records of the county, such as is conferred by the statutes of the various states, which have held that an abstracter corporation chartered for the purpose of making abstracts might examine and copy the records.

*George S. Green*, *Alfred Chartz*, and *T. A. A. Siegfriedt*, for Relator, in reply:

I.  The only statutory provision cited by the respondent in support of his contention is at the bottom of page 17 and the top of page 18 of his brief, which provides certain fees for making abstracts of title and searches of the records. Apparently it is not pretended by the respondent that there are any provisions in the laws of Nevada making it his duty to compile abstracts of title, and we have failed to find any. The qualifications of searchers of records are not mean, and a candidate for the office of recorder is not bound to qualify with respect to them.  Recorders are not to be presumed to know the requisites of a sufficient abstract of title; on the contrary, it is probable that one who enters upon the duties of the office of recorder would more often not know than know.  And not being his duty as required by law, he could not be compelled to furnish an abstract if he should refuse.

II.  Further reference is hereby made to statutes of the State of Nevada allowing the free inspection of public records.  (Stats. 1897, p. 78, sec. 3; Stats. 1891, p. 97, sec. 6; Stats. 1866, p. 202, sec. 8; Comp. Laws, 1613.)  For further support of the doctrine that the fee of an official attaches only upon having performed some service for the individual, see *Williams* v. *State*, 2 Sneed, 162; *Henderson* v. *State*, 96 Ind. 441.

By the Court, TALBOT, J.:

To what extent is a company engaged in the business of furnishing abstracts and guaranteeing titles allowed to inspect, examine, and copy the records in the office of the county recorder, without the payment of fees, is the question presented.

From the petition, answer, and agreed statement of facts it appears that the respondent, as county recorder, has refused, and unless ordered by this court will continue to refuse, to allow the relator, or its duly authorized secretary and general manager, either for itself or as agent for the owner of the property, to inspect, copy, or make memoranda

of the record of a specified certificate of mining location, and of a certain deed and the other records in the office of the county recorder of Nye County; that the relator seeks, and has demanded, to inspect and copy these records free of charge for the purpose of compiling an independent set of abstract books covering all the property pertaining to these records with the intention of supplying and selling abstracts to its customers.

Respondent was and is willing to permit relator's agent to inspect the records for his personal use and information, provided that he does not take any compensation or fees from any other person for so doing, but refuses to allow him or the relator to inspect or copy the records for the use of relator in preparing abstracts, except upon payment of the fees allowed by law for making abstracts.

The relator, in the pursuit of its abstracting, record searching, and title guaranty business, and for the purpose of preparing a set of abstract books, had engaged one man continuously for three or four months in searching these records, taking memoranda and making copies, and, if permitted, will continue for three or four months to keep one or more men engaged in copying, searching, and taking memoranda, and, when the abstract books of relator are completed, relator will demand the right to inspect and take memoranda from the records of all conveyances thereafter filed, for the purpose of keeping up to date its abstract books and for its use in compiling abstracts of title.

Relator claims that under our statutes and also under the common law it has a right to examine and copy all these records. Respondent challenges both these contentions, and asserts that, as no such privilege is conferred by statute, the common law controls and limits the right of inspection to persons having an interest in the subject-matter to which the record relates.

In seeking light and authority on these propositions, we first turn to the statutes, and find provided in the Compiled Laws:

Sections 2663 and 2664: Every conveyance of real estate, and every instrument of writing setting forth an agreement

to convey any real estate, or whereby any real estate may be affected, proved, acknowledged, certified and recorded in the manner prescribed, "shall from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof; and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice."

Section 2715:    "A mortgage upon possessory claims to public lands, all buildings and improvements upon such lands, all quartz and mining claims, and all such personal property as shall be fixed in its structure to the soil, acknowledged in manner and form as mortgages upon real estate are required by law to be acknowledged and recorded in the office of the county recorder in which the property is situated, shall have the same effect against third persons as mortgages upon real estate."

Section 2705 directs the several county recorders to procure suitable books at the expense of the county in which all chattel mortgages shall be recorded, and provides that "such books shall, at all times, be open to the public for inspection."

Section 2718:    "All instruments of writing now copied into the proper books of record of the office of the county recorders of the several counties of this territory, shall, after the passage of this act be deemed to impart to subsequent purchasers, and all other persons whomsoever, notices of all deeds, mortgages, powers of attorney, contracts, conveyances or other instruments, notwithstanding any defect, omission, or informality existing in the execution, acknowledgment or certificate of recording the same."

Section 2730 provides that certain officers, including recorders, "authorized by law to take the proof or acknowledgment of the execution of conveyances of real estate or other instrument required by law to be proved or acknowledged, shall keep a record of all their official acts in relation thereto in a book to be provided by them for that purpose, in which shall be entered the date of the proof or acknowledgment thereof, the date of the instrument, the name or character of the instrument proved or acknowledged, and the names of each of the parties thereto, as grantor, grantee, or otherwise.   Said records shall, during business hours, be open to public inspection without fee or reward."

Section 2736: "All instruments of writing relating to mining claims now copied into books of mining or other records, now in 'the office of the county recorders of the several counties of this state, shall, after the passage of this act, be deemed to impart to subsequent purchasers and incumbrancers, and all other persons whomsoever, notice of the contents thereof."

Section 3364 provides for notice of the pendency of an action, and "that from the time of the filing it shall be notice to all persons."

Section 3396 makes the record of conveyances in partition suits a bar against persons interested in the property.

Section 2453 provides that filing with the recorder shall be deemed notice of the appointments and revocations of deputy county officers.

Section 3304 provides that a transcript of the original docket of judgments in the district court certified by the clerk may be filed with the recorder of any other county, "and from the time of the filing, the judgment shall become a lien upon the property of the judgment debtor in such county," but does not direct the method or extent of inspection there; by section 3652 it is enacted that "no judgment rendered by a justice of the peace shall create any lien upon the lands of the defendant unless a transcript of such judgment certified by the justice is filed and recorded in the office of the county recorder."

Section 2348 directs that certain newspapers be preserved by the recorders, and that strangers and inhabitants of the county "shall have access to the same at all times during business hours, free of charge."

Section 2776 provides that the record of partnership certificates shall be "open to public inspection," and section 755 that estray notices "shall be subject to examination by all persons making application to the recorder."

Stats. 1905, p. 221, makes it the duty of the county and district recorders to keep a receiving book in which they shall enter the name of each document in the order in which it is filed, its number and date of filing, and the amount of fees collected for its recording or filing, and the same is made

the fee book of the recorder open to any one desiring to inspect.

There are other sections providing for the filing or recording in the office of the county recorder of mining location notices (210, 232, and 238); proof of annual labor on mines (217); notice of location of tunnel rights (228); location of mill sites (224); inventories of the separate property of married women (512 and 513); marriage settlements (539); orders relating to the rights and property of sole traders (546 and 547); certificates of tax sales (1112); declarations of homestead (550); decrees setting apart homesteads (3040); copies of writs of attachment (3223); certificates of sale on execution (3326); certificates for construction of ditches and flumes (425); affidavits of service of notice to delinquent coöwners of mines (218); liens to mechanics, miners and others (2885); state engineer's list of priorities of appropriations of water (Stats. 1903, p. 28, c. 4).

Section 1613 provides that certain records, and papers pertaining to elections, "shall be subject to the inspection of any elector."

Section 2483 requires officers to keep fee books "open to the inspection of any one desiring to inspect the same."

Under section 1212 the books of revenue officers are "open to any person whomsoever to inspect or copy, without any fee or charge."

There are provisions relating to other officers, for illustration, section 2110, directing that the books, records, and accounts of the boards of county commissioners "shall be kept by the clerk, during business hours, open to public inspection free of charge"; section 303, providing that the plats, papers, and documents in the office of the state land register "shall be open to public inspection during office hours without fee therefor," and that county assessors "shall keep copies of township plats subject to the inspection of all persons interested in examining the same"; section 2114, requiring county auditors to keep a complete set of books showing every money transaction of the county, "which shall be open to the inspection of the public free of charge"; section 2148, providing for publicity by publication of the allowance of

bills against the county; section 2328, requiring county treasurers "at all times to keep their books and office subject to the inspection and examination of the boards of county commissioners"; section 4177 entitles grand juries "to the examination without charge of all public records"; section 3303 requires that the docket of judgments in the district courts "shall be open at all times during office hours for the inspection of the public without charge," and that the clerk shall arrange the docket in such a manner as to facilitate inspection.

We have no statute similar to section 131 of the county government act in California (Stats. 1897, p. 488, c. 277), which provides that "all books of record, maps, charts, surveys and other papers on file in the recorder's office, must, during business hours, be open for inspection by any person, without charge; and the recorder must arrange the books of record and indices in his office in such suitable places as to facilitate their inspection." Nor have we any general act, such as prevails in a number of states, directing' that all records in the offices of county and township officers shall be open for inspection by the public. The provisions regarding county recorders, sections 2340 to 2344, inclusive, are silent concerning such examination.

Sections 2459 and 2471 designate the fees " for abstracts of title for each document embraced thereby," and " for searching records and files for each document necessarily examined," but contain no words either authorizing or prohibiting the making of abstracts or searches by others than the recorder, or specifying whether he shall' be entitled to compensation if the work is not performed by himself or his deputies.

The decisions on similar questions in other jurisdictions rest largely upon statutes not in uniformity with ours or with each other, and there is a lack of harmony among the opinions not only in different states, but of the court and judges in the same state. We will consider some of these cases more particularly, owing to the especial reliance placed by relator upon *Burton* v. *Tuite* and *Lum* v. *McCarty*, *infra*.

In *Webber* v. *Townley*, 43 Mich. 534, 5 N. W. 971, 38 Am. Rep. 213, decided in 1880, all the justices, including those of

such high and widely recognized reputations as Cooley and
Campbell, held that there is no common-law right to make
copies or abstracts of public records for speculative pur-
poses, as for the compilation of a set of abstract books for
selling abstracts of title; and that no such right was given
by an act providing "that the registers of deeds shall fur-
nish proper and reasonable facilities for the inspection and
examination of the records and files in their respective
offices, and for making memorandums or transcripts there-
from during the usual business hours, to all persons having
occasion to make examination of them for any lawful pur-
pose; provided, that the custodian of such records and files
may make such reasonable rules and regulations with refer-
ence to the inspection and examination of them as shall be
necessary for the protection of said records and files, and to
prevent the interference with the regular discharge of the
duties of said register; and provided further, that said regis-
ter of deeds may prohibit the use of pen and ink in making
copies or notes of records and files." (Pub. Acts Mich. 1875,
p. 51, No. 54.)

In *Webber* v. *Townley*, speaking for the court, Marston,
C. J., said: "We are of the opinion that under the com-
mon law relators have not the right claimed. The right to
an inspection and copy or abstract of a public record is not
given indiscriminately to each and all who may, from curi-
osity or otherwise, desire the same, but is limited to those
who have some interest therein. What this interest must be
we are not called upon in the present case to determine.
The question has usually arisen where the right claimed was
to inspect or obtain a copy of some particular document, or
those relating to a given transaction or title. We have not
been referred to any authority which recognizes the right of
a person under the common law to a copy or abstract of the
entire records of a public office in which he had no special
interest; the object in view being simply private gain from
the possession and use thereof. Relators do not ask for an
inspection of a record or abstract thereof relating to lands in
which they claim to have any title or interest, or concerning
which they desire information in contemplation of acquiring

some right or interest, either by purchase or otherwise. It is not as the agents or attorneys of parties seeking information because interested · or likely to become so. On the contrary, the right is based upon neither a present nor prospective interest in the lands, but is for the future private gain and emolument of relators in furnishing information therefrom to third parties for a compensation then to be paid. It is a request for the law to grant them the right to inspect the record of the title to every person's land in the county, and obtain copies or abstracts thereof, to enable them hereafter, for a fee or reward, to furnish copies to such as may desire the same."

Relator contends that this opinion was reversed by the same court in the leading case of *Barton* v. *Tuite*, 78 Mich. 363, 44 N. W. 282, 7 L. R. A. 73, determined in 1889. Such is conceded to be the effect in the language there, and in a number of decisions made later in that and other states; but, in reality and stripped of dicta, it was held that salesbooks kept by the receiver of taxes, containing a statement of the sales of delinquent tax lands, and by him turned over to ·the city treasurer, who noted therein redemptions and sales, were public records, and that relator, who had been employed by the owner of the property to examine in regard to tax sales, or where these sales were liens upon property to which he was furnishing abstracts, had the right to make such examinations of the public records as the necessity of his business might require, and that this right was assured to him under Act No. 205, p. 286, Laws Mich. 1889, which provides: " That the officers having the custody of any county, city, or town records in this state shall furnish proper and reasonable facilities for the inspection and· examination of the records and files in their respective offices, and for making memoranda or transcripts therefrom, during the usual business hours, to all persons having occasion to make examination of them for any lawful purpose," subject to conditions similar to those quoted in the act of 1875 relating to registers.

In delivering the opinion, Morse, J., said: "I do not think that any common law ever obtained in this free government that would deny to the people thereof the right of free access

to, and public inspection of, public records. They have an interest always in such records, and I know of no law, written or unwritten, that provides that, before an inspection or examination of a public record is made, the citizen who wishes to make it must show some special interest in such record. I have a right, if I see fit, to examine the title of my neighbor's property, whether or not I have any interest in it, or intend to have. I have also the right to examine any title that I see fit, recorded in the public offices, for the purposes of selling such information, if I desire. No one has ever disputed the right of a lawyer to enter the register's office and examine the title of his client to land as recorded, or the title of the opponent of his client, and to charge his client for the information so obtained. This is done for private gain, as a part of the lawyer's daily business, and by means of which, with other labors, he earns his bread. Upon what different footing can an abstracter be placed, within the law, without giving a privilege to one man or class of men that is denied to another? The relator's business is that of making abstracts of title, and furnishing the same to those wanting them, for a compensation. In such business it is necessary for him to consult and make memoranda of the contents of these books. His business is a lawful one, the same as is the lawyer's, and why has not he the right to inspect and examine public records in his business as well as any other person? It is plain to me that the legislature intended to assert the right of all citizens, in the pursuit of a lawful business, to make such examinations of the public records in public offices as the necessity of their business might require, subject to such rules and restrictions as are reasonable and proper under the circumstances. The respondent in this case is the lawful custodian of these salesbooks, and is responsible for their safe-keeping, and he may make and enforce proper regulations, consistent with the public right, for the use of them. It follows that he has no right to demand any fee or compensation for the privilege of access to the records, or for any examination thereof not made by himself or his clerks or deputies. He has no exclusive right to search the records against any other citizen. (*Lum* v.

*McCarty*, 39 N. J. Law, 287; *Boylan* v. *Warren*, 39 Kan. 301, 18 Pac. 174, 7 Am. St. Rep. 551; *State* v. *Rachac*, 37 Minn. 372, 35 N. W. 7; *People* v. *Richards*, 99 N. Y. 620, 1 N. E. 258; *Hanson* v. *Eichstaedt*, 69 Wis. 538, 35 N. W. 30.)"

Apparently these remarks met the approval of Chamberlin, J., who concurred without qualification, but not of the majority of the court, for Campbell, J., whose concurrence in the judgment made it effective, confined his opinion to the point that the relator had such an interest under the act mentioned as entitled him to see the books in question. Sherwood, C. J., and Long, J., did not sit, and these statements may be considered as sanctioned by only two of the five justices. The case rested upon the Michigan statute. No English or other decision was cited that supported the assertion of Justice Morse that he knew of no common law that denied the right of free inspection or required the citizens desiring to make it to show some interest in the record. Although this language is interesting as a statement of the opinion of an able member of a court of high standing, it was not only unnecessary for the determination of the case as controlled by legislative enactment, and unsupported by any authority excepting the concurrence of one of the justices, but it was a begging of the question, for, if no common law prevails in this country which prevents, and there is no decision sustaining the right of an abstract company or others to inspect or copy all the records in which it, or they, have no interest as owner or agent, it is evident that no such right exists unless granted by statute. With no decision conceding or denying such right, nothing appears on which to base the assumption that it is authorized by common law. The same may be said regarding the force of similar expressions quoted in the brief from other opinions.

In *Day* v. *Button*, 96 Mich. 600, 56 N. W. 3, it was held that the right to examine the records in the office of the register of deeds, and to make memoranda therefrom, for the purpose of making a set of abstract books, was established by *Burton* v. *Tuite*, *supra;* but, as we have seen, the majority of the court did not go so far in the earlier of these cases. This doctrine as broadened is better warranted by the statute in that state.

Distinguishing those cases and the records in the office of the register from those in suits between individuals, subsequently, in *Burton* v. *Reynolds*, 110 Mich. 354, 68 N. W. 217, the court refused a writ of mandate to compel the clerk of the circuit court to permit one engaged in making abstracts of title to examine and copy a file in an action relating to land between private parties, upon a petition which negatived constructive notice of the pendency of the action, and did not assert actual notice, nor state that the examination and copying of the file was necessary to the interest of his employer, although it did state that it was necessary to the completion of the relator's work.

In *Brown* v. *County Treasurer*, 54 Mich. 132, 19 N. W. 778, 52 Am. Rep. 800, the citizen seeking and refused inspection of liquor bonds filed with the county treasurer, and wishing information that would aid in a prosecution for an infraction of the law, had a different interest than one man has in the title to another's property.

In *Lum* v. *McCarty*, 39 N. J. Law, 287, a leading case cited to support the opinion in *Burton* v. *Tuite*, above, the court overruled *Flemming* v. *Clerk of Hudson County*, 30 N. J. Law, 280, and held that county clerks were not entitled to fees for searches not made by themselves or assistants of the records in their offices, of deeds, mortgages, and judgments. The statute provided for access to the records excepting those of judgments in the circuit court. The action was for the recovery of fees paid by the plaintiff's attorney under protest, when he was refused inspection until he paid the same fees for the privilege of examining the records that the clerk would have been entitled to charge if he had made the examination. In justification of, and by way of distinguishing, a subsequent decision by the Supreme Court of New Jersey, to which we shall refer later, it is proper to observe that the issue presented did not relate to the right of an abstract company or person without interest to copy or examine all the records. This should be borne in mind in considering the weight to which the opinion is entitled as bearing on the different issue with which we are confronted.

The case is more directly applicable to the question whether

one authorized by statute under the designation of "all persons" and having an interest in property, may have his attorney search the records without the payment of fees. The court said: "By the third section of the 'Act to regulate fees' (Nix. Dig. p. 322) provision is made for the compensation of county clerks for certain services, among which is the searching of the records in their offices. The provision cannot be extended by construction, so as to authorize a demand by the clerk for pay for services not in fact rendered by him or his assistants. The defendant, therefore, was not entitled to the fees in question, under that provision. The only other provisions which are claimed to have a bearing on the question are the ninth section of the 'Act respecting conveyances,' which, after providing for the recording of deeds in books to be furnished for the purpose, adds 'to which books every person shall have access, at proper seasons, and be entitled to transcripts from the same, on paying the fees allowed by law' (Nix. Dig. p. 146), and the first section of the 'Act to register mortgages,' which, after like provision for registering mortgages of lands in proper books, adds 'to which books every person shall have access, at all proper seasons, and may search the same, paying the fees allowed by law' (Nix. Dig. p. 610). It is also suggested that the absence of any provision for access by the public to the records of judgments of the circuit courts favors the charge, so far as the records of those judgments are concerned. No authority for taking fees for searches not made by himself or his assistants is to be derived by the clerk from either of the above-quoted provisions. The first, while it provides for compensation for transcripts, contains no qualification of the right of the public thereby declared to access to the records, and it authorizes no charge whatever in connection with the exercise of that right. Though the language of the other may seem to qualify the right to search with the necessity of paying fees, yet the obvious construction of the provision is that the fees for search are to be paid only when the search is made by the clerk or his assistants. The right of the public to free access to the records carries with it the right to search without charge for the privilege. Nor can a claim on the

part of the clerk to fees for a search not made by himself or
his assistants, in the records of the judgments of the circuit
court in his office, be justified by the fact that no special pro-
vision is made for access by the public to those records.
They are no less free to the public, by reason of the absence
of a provision declaring the right.   They are, in fact, public
records, and are public property, kept in a public place, at
the public expense, for the public benefit.   For the conve-
nience of the public in examining them, the law provides for
the making of proper indexes of their contents.   (Nix. Dig.
'Practice Act,' p. 729, par. 77.)   The law expressly provides
for free access by the public to the records of attachments,
notices of *lis pendens*, circuit court judgments docketed in
the supreme court, and judgments of justices' courts docketed
in the courts of common pleas.   (Nix. Dig. pp. 39, 112, 442,
474.)   The clerk is the lawful custodian of the records, and
indexes thereto, and is responsible for the safe-keeping
thereof.   His powers over them are such as are necessary for
their protection and preservation.   To that end, he may
make and enforce proper regulations consistent with the
public right for the use of them.   But they are public prop-
erty, for public use, and he has no lawful authority to exclude
any of the public from access to, and inspection and exami-
nation thereof, at proper seasons and on proper application.
The clauses which declare the public right in this behalf
employ the most comprehensive and general language:  'All
persons desiring to examine the same.'   'Every person shall
have access.'   It follows that the clerk has no right to demand
any fee for the privilege of access to the records and indexes,
or for any examination thereof not made by himself or by
his assistants."

In *Ferry* v. *Williams*, 41 N. J. Law, 332, 32 Am. Rep. 219,
it was held that every person is entitled to the inspection of
documents of a public nature, provided he has the requisite
interest.   The court enforced by *mandamus* in favor of a
citizen the right of inspection of letters of recommendation
filed as a basis for the issuing of licenses.   In principle the
case is in some respects like the one before us, because the
New Jersey statutes did not provide for the examination of

these letters, but did for the inspection of many other records as we have seen. The following extracts from the opinion are also instructive regarding the controlling and disputed point in the common law: "The documents in question are of a public nature, and the rule is that every person is entitled to the inspection of such instruments provided he shows the requisite interest therein. And as Lord Denman remarks, in *Rex* v. *Justices of Staffordshire*, 6 A. & E. 84, the court is by no means disposed to narrow its authority to enforce by *mandamus* the production of every document of a public nature in which any citizen can prove himself to be interested. For such persons, indeed, every officer appointed by law to keep records ought to deem himself for that purpose a trustee. The relator asserts no interest to be subserved by an inspection of these letters, except that common interest which every citizen has in the enforcement of the laws and ordinances of the community wherein he dwells. In England, the occasions which generally have required the exercise of the power of the court to enforce inspection of public documents have been those where a party has sought evidence for the prosecution or defense of his rights in pending litigation. In such cases, when the custodian of the documents was a party in the cause, the court usually intervened by rule, otherwise by *mandamus*. But the existence of a suit was not a *sine qua non* for the exertion of a power. In *Rex* v. *Lucas et al.*, 10 East, 235, a *mandamus* was sought to compel the steward of a manor to permit one claiming certain copyhold lands within the manor to inspect the court rolls and take copies. The lord, claiming himself to be the owner of the lands, resisted, on the ground that there was no cause depending, but the Court of King's Bench granted the writ, notwithstanding the opinion before expressed in *Rex* v. *Allgood*, 7 T. R. 742: Lord Ellenborough saying: 'I do not know why there should be any cause depending in order to found an application of this sort. This is not the impertinent intrusion of a stranger, but the application of one who is clearly entitled to the copyhold, unless there be a conveyance of it by those under whom he claims; he may therefore well require to see

whether there appears upon the rolls to be any such con-
veyance.' So in *Rex* v. *Tower*, 4 M. & S. 162, on a con-
troversy, but without suit, between a tenant of the manor
and the lord, as to cutting underwood, the court granted
a *mandamus* to inspect the court rolls so far as related
to that subject. Likewise in *Rex* v. *Justices of Leicester*, 4
B. & C. 891, a *mandamus* was granted that certain rate-
payers be allowed to inspect and take copies of the proceed-
ings and documents relating to the parish rates, although no
suit was pending; and, while this case is disapproved in
*Rex* v. *Vestryman of St. Marylebone*, 5 A. & E. 268, and
overruled in *Rex* v. *Justices of Staffordshire*, 6 A. & E. 84,
yet in neither case is it suggested that it was erroneous
because no action had been brought. The disapprobation
turns upon the principle that the ratepayers had no interest
to be subserved by the inspection, since no information to be
obtained from the documents could aid them in the enforce-
ment or protection of any lawful claim; Lord Denman say-
ing, in the case last cited, that the subject-matter was not
one which the ratepayer could bring before the court as a
litigant, and hence there was not that direct and tangible
interest which is necessary to bring persons within the rule
on which the court acts in granting inspection of public
documents. In *Rex* v. *Merchant Tailors' Co.*, 2 B. & Ad. 115,
although a *mandamus* was refused to members of the com-
pany seeking an inspection of all the records, books, papers,
and muniments of the company, because of the generality of
the application, it was conceded by all the judges that, if the
application had been limited to some legitimate and particular
purpose in respect of which the examination became neces-
sary, it would have been allowed, and that there was no rule
that to warrant an order to inspect corporation documents
there must actually have been a suit instituted. But when-
ever the subject was, by reason of his relation to the common
interest, permitted to litigate for its protection, the right of
inspection was fully secured to him. Thus, in *Rex* v. *Shelley*,
3 T. R. 141, where some of the burgage tenants were testing
by *quo warranto* the right of the defendant to be a burgess, a
full inspection of the court rolls, not limited to the evidence

of their own titles, was granted them. In *Rex* v. *Babb*, 3 T.
R. 579, on an information by three aldermen to inquire into
the right of Woolmer to be mayor of Great Grimsby, the
relators had a rule for the inspection and copies of all the
public books, records, and papers of the borough of Great
Grimsby regarding the subject in dispute."

In *West Jersey Title and Guaranty Co.* v. *Barber*, 49 N. J.
Eq. 474, 24 Atl. 381, it was held that an abstract company
has the same rights as an attorney or individuals to search
the county records for others, and, when employed to examine
the title to any particular piece of property, becomes subro-
gated to the right of the employer to have access to them,
notwithstanding it contemplates making a contract of guaranty
of the title.

In *Barber* v. *West Jersey Title and Guaranty Co.*, 53 N. J.
Eq. 158, 32 Atl. 222, decided in 1894, five years after *Burton* v.
*Tuite*, the complainant claimed the right to have free access
to the records and files daily during business hours for the
purpose of inspecting and making abstracts and memoranda.
It was held that every person has the right to examine the
public records relating to any title in which he is interested,
without the payment of fees, subject to reasonable rules and
regulations, and that the abstract company has this privilege
when employed to examine and guarantee the title to a par-
ticular piece of property, but has not the right to occupy the
office of the clerk for the purpose of making an abstract of
the records in order to set up a rival business to the clerk.
In considering the following portion of the opinion, it is well
to remember the New Jersey statutes providing for inspection,
as before noted: "The case of *Lum* v. *McCarty*, 39 N. J. Law,
287, is relied upon to support this decree. In that case Lum
was employed to search a specific title, and this court held
that he had a right of access to the records in the clerk's
office, for that purpose, without the payment of fees to the
clerk. But that case is not authority for the contention
that any one may occupy the offices of the county clerk until
he has made copies of all the records in the care of the
clerk for the purpose of setting up a rival office, whereby he
will be deprived of the emoluments of his office. It is con-

ceded that the corporation complainant is entitled to the same right of access to, and examination of, the public records of the county as an individual would be. Our act respecting conveyances, after providing for the recording of deeds in books to be furnished for that purpose, adds, 'to which books every person shall have access at proper seasons, and be entitled to transcripts from the same on paying the fees allowed by law.' *Lum* v. *McCarty, supra,* construed this provision to mean that fees were to be paid to the clerk only when he made searches himself, and did not preclude a person interested from making searches for himself. The law makes it the duty of the clerk to take care of the public records in his office, but gives him no special fees for such service. The only compensation to him are the fees he receives in the ordinary course of his business for searches. To extend the right of search by others beyond this limit will deprive the clerk of the only remuneration he can have for the performance of this duty. In the absence of clear expression, it should not be so enlarged by construction. In other states where the statutory provisions are less favorable to the public officer, the courts have denied the right of any one to make at will an abstract of the official records. The respondent, by force of its incorporation, has the same right to inspect the public records which may lawfully be exercised by an individual. Every person, without legislative authority, may engage in the business of examining and guaranteeing titles as fully as this company is empowered to do by its act of incorporation. When such a person or a company, with such authority, is empowered to examine and guarantee a particular title, the clerk, upon demand, is bound to give access to the records for that purpose, subject to reasonable rules and regulations."

In *Fidelity Trust Co.* v. *Clerk,* 65 N. J. Law, 495, 47 Atl. 451, the court sustained the refusal of the clerk to permit an examination of certain indices in the supreme court relating to judgments which were a lien upon lands.

In *Newton* v. *Fisher,* 98 N. C. 23, 3 S. E. 823, it was said in the opinion: "All persons have the right to inspect these records freely and without charge, and all persons, who may

desire to do so, can get copies by paying the prescribed fees. It is the duty of the register to keep them open to the inspection and examination of all who may desire to inspect and examine them, and for this there is no fee; it is his duty to furnish copies to all who require them and will pay the fees allowed. Perhaps, in addition to this, so long and so universal has been the custom, that it may be said to be the right of lawyers, and others needing them, to take such reasonable memoranda as may not interfere with the rights and duties of the register, and we have never known this refused. We know of no law that requires the register, in this respect, to do more. No one has the right, to use the language of the learned judge in the court below, 'to make copies or abstracts of the entire record of the office, including those instruments in which the person so desiring to make abstracts is not at the time interested, but simply anticipates that he will at some time be interested, and abstracts of which he desires to make for merely speculative purposes. In this view the plaintiff would be entitled to every facility for the legitimate prosecution of his business by access to the records for the examination of instruments registered, but the court is not satisfied of his right to make an abstract to all transfers of real and personal property for the year 1886, without having an interest in the same, for the prosecution of his business, or paying any fee therefor.' "

In *Randolph* v. *State ex rel.*, 82 Ala. 527, 2 South. 714, 60 Am. Rep. 761, following *Brewer* v. *Watson*, 71 Ala. 299, 46 Am. Rep. 318, and *Phelan* v. *State*, 76 Ala. 49, it was held that section 698 of the Code of 1876, providing that "the records of the judge of probate's office must be free for the examination of all persons, when not in use by him," conferred the right of free examination of the records, by any person having an interest, his agent, or attorney, and the right to take memoranda or copies, but did not extend to attorneys or other persons engaged in negotiating loans on real estate, and who desired to make an abstract from the records of conveyances of the titles to all the lands in the county, for future use when required in their business. Stone, C. J., speaking for the court, said: "It is not the

unqualified right of every citizen to demand access to, and inspection of, the books or documents of a public office, though they are the property of the public, and preserved for public uses and purposes. The qualification of the rule is that no person can demand the right save those who have an interest in the record, their lawful agents, or attorneys. We must not, however, be understood as intending to abridge the right, conferred by statute, of 'free examination,' by all persons having an interest, of the records of the probate judge's office. Nor will we confine this right to a mere right to inspect. He may make memoranda, or copies, if he will, and, to this end, may employ an agent or attorney. The limitation is that he must not obstruct the officers in charge in the performance of their official duties, by withholding records from them, when needed for the performance of an official function. Nor is this right of examination confined to persons claiming title, or having a present pecuniary interest in the subject-matter. It will embrace all persons interested, presently or prospectively, in the chain of title, or nature of incumbrance, proposed to be investigated. The right of free examination is the rule, and the inhibition of such privilege, when the purpose is speculative, or from idle curiosity, is the exception."

In *State ex rel.* v. *King, Auditor*, 154 Ind. 621, 57 N. E. 535, it was held that a citizen and taxpayer of the county has such an interest as entitles him to examine the records and papers in the county auditor's office for the purpose of ascertaining the condition of the fiscal affairs of the county. The court stated: "The general rule which obtained at common law was that every person was entitled to an inspection of public records, by himself or agent, provided he had an interest in the matters to which such records related. Where, however, the inspection desired was merely to gratify idle curiosity, or motives which were purely speculative, the right of inspection, under the common law, was denied. The right to inspect the records in question also impliedly awards to the person entitled to it sufficient time, under the circumstances, in which to make the inspection for the purpose contemplated. We are constrained, therefore, to conclude

that the relator in this case, under the facts, is entitled to the inspection which he demands, and also entitled to make such copies and abstracts of the records as may avail him in carrying out the purpose of his examination."

Under the Code of Georgia of 1873 (section 14), declaring that all books kept by any public officer shall be subject to the inspection of all citizens, within office hours, and the fee bill (section 3695), providing, "for each inspection, when the clerk's aid is required, twenty-five cents; for examination of books and abstract of result, one dollar," the right to make an abstract of the books for publication was denied. The court said in *Buck* v. *Collins*, 51 Ga. 393, 21 Am. Rep. 236: "Under these laws, the complainant insists that he has a right to go into the clerk's office, during office hours, from day to day and from month to month, at his pleasure, copy from the books, when they are not in use, at his option, and thus collect material for a book which he proposes to publish for sale. As he is able, by employing an expert to do this inspection and compilation himself, without the assistance of the clerk, he insists that no fee is required, and as the clerk refuses to permit him to go on with his enterprise, except upon the payment of a fee for each separate investigation of a title, he prays that the clerk may be enjoined. We agree with Judge Hopkins. We think the complainant has no such right as he insists upon. The necessities of society, and the protection of those dealing with property, require that these records shall exist. That the title to land, the fact that mortgages or judgments exist, shall be capable of being inquired into by those interested. The character of one's title, and whether one has mortgages or judgments against him, is thus of necessity open to inquiry, and the public, by providing books and records, meets this necessity. The object of the record is to furnish to those needing it the information the record contains. That object is attained when its books are open to inquiries as these occasions present themselves. All laws are to be reasonably construed in view of the object of them, and in view of other laws. It is contemplated that lawyers, public officers, and persons familiar with the books, by having frequent occasion to use

them, may not need the clerk's assistance for the purpose. The clerk cannot charge a fee for a mere inspection, where his aid is not required. But no person has a right to examine or inspect the records of his office, except in his (the clerk's) presence, and under his observation."

In *Clay* v. *Ballard*, 87 Va. 787, 13 S. E. 262, the contention was regarding the right of a citizen to take copies of the registration books under a statute providing for public inspection. It was held that, although the registrar was allowed no compensation for time lost in so doing, yet he would be compelled by *mandamus* to allow any citizen to inspect and take copies of these books, and that every citizen had an interest in them. The court said: "These books, undoubtedly, are of a public nature, and therefore, upon general principles, independently of any statute on the subject, any person having an interest in them would have a right to inspect them. But the legislature, out of abundant caution, and with an unmistakable object in view, has seen fit to enact expressly that they 'shall at all times be open to public inspection.' (Code 1887, sec. 84; Va. Code 1904, p. 51.) The case turns upon the construction of this statute. At common law, the right to inspect public documents is well defined and understood. The authorities on the subject are very numerous, and they uniformly hold that such a right includes the right, when necessary to the attainment of justice, to take copies. Greenleaf, than whom there is no more accurate textwriter in modern times, lays it down that the inspection and exemplification of the records of the king's court is, and from a very early period has been, the common right of the subject. And, as to other public documents, the custodian of them, he says, will, upon proper application, be compelled by *mandamus* to allow the applicant to inspect them, and, if desired, to take copies. (1 Greenl. Ev. secs. 471, 478.) "Tidd, in his Practice, gives it as a general rule, well settled, that a party has a right to inspect and take copies of all such books and records as are of a public nature wherein he has an interest. (1 Tidd's Pr. 593.)"

Under a statute providing that "all books and papers required to be in the office of county officers shall be open

for the examination of any person," it was held, in *Cormack* v. *Wolcott*, 37 Kan. 391, 15 Pac. 245, and in *Boylan* v. *Warren*, 39 Kan. 304, 18 Pac. 174, 7 Am. St. Rep. 551, that the register of deeds would not be compelled to permit any person to make copies of the entire records for the purpose of making a set of abstract books for private use or speculation. A similar decision was made upon a similar act in *Bean* v. *People ex rel.*, 7 Colo. 200, 2 Pac. 909, and later this rule was changed in that state by an explicit statute allowing copies to be so taken. (*Stockman* v. *Brooks*, 17 Colo. 248, 29 Pac. 746.)

Under chapter 74, Comp. Stats. Neb. 1903, declaring that "all citizens of this state and all other persons interested in the examination of the public records are hereby fully empowered and authorized to examine the same, free of charge," during office hours, it was held that an attorney in fact of a party to a suit had a right to examine the entries relating to a judgment of a justice of the peace, and had such an interest as entitled him to a transcript.

By statute, in New York, abstract companies are entitled to free access to, and to copy, the records. (*People ex rel. Guaranty Co.* v. *Reilly*, 38 Hun, 431; *People* v. *Richards*, 99 N. Y. 620, 1 N. E. 258.)

Under section 700, Rev. Stats. Wis. 1898, providing that the "register of deeds shall open to the examination of any person all books and papers required to be kept in his office, and permit any person so examining to take notes and copies of such books, records or papers, or minutes therefrom," it was held that this right was not limited to lands in which such person or his clients were pecuniarily interested, and that any person might examine and take notes and copies of the record for use in making abstract books. The court said: "In so far as the Alabama and Michigan courts may have indicated that a statute giving certain enumerated rights respecting records to 'any person' is a mere confirmation of a rule at common law, giving similar rights to only a particular class of persons, we must decline to follow them."

*State* v. *Rachac*, 37 Minn. 373, 35 N. W. 7, is a fair sample of the class of cases which uphold the right of abstract companies to copy all the records, and illustrative of the fact

that this privilege is conferred only by plain legislative enactment. The court said: "The counsel for appellant plants himself squarely upon the broad proposition that respondents are not entitled to any such privileges, because they have no interest in the records which they desire to examine. His contention may be briefly stated thus: (1) At common law no person had a right to examine or copy the records in a public office in which he had no interest, present or prospective; (2) that the statute does not extend this right to others, but merely regulates its exercise by those who already possessed it at common law. Conceding that the rule at common law was as stated, the question is, how far has this been changed by Gen. Stats. 1878, c. 8, sec. 179, as amended by Laws 1885, p. 108, c. 116? We think the matter is entirely put at rest by the amendment of 1885. It is a matter of common knowledge that, at the time this amendment was passed, in a large majority of counties in this state, persons had engaged in the 'abstract' business, and at much expenditure of time and money had prepared, or were preparing, these abstract books or tract 'indexes.' These abstract offices, if properly conducted, are of great public convenience. Under this state of affairs, the legislature enacted the amendment referred to, which throughout bears clear evidences of being intended to define and fix the right of all who might desire to make copies of or abstracts from any of these records. The original statute gave to every one demanding it the right to 'inspect' these records. But, as there might be a doubt as to what the right of inspection included, the amendment adds 'either for examination, or for the purpose of making or completing an abstract or transcript therefrom.' "

In Vermont, under a statute providing that the "books of record of justices of the peace should at all times be subject to the inspection of any person interested in such record," it was held that a citizen was not entitled to see the complaint and warrant in a criminal proceeding. (*Perkins* v. *Cummings*, 66 Vt. 486, 29 Atl. 675.)

By statute, in Connecticut, coroners are required to reduce to writing, and return to the clerk of the superior court, the

testimony of witnesses at inquests, with his findings. The court held, three of the justices concurring, and two dissenting, that these documents in the hands of the clerk were open to inspection by the defendant charged with the crime, and by all persons interested. (*Daly* v. *Dimock*, 55 Conn. 579, 12 Atl. 405.)

In *State ex rel.* v. *Hoblitzelle*, 85 Mo. 624, the court stated: "While we regard the poll books as belonging to that class of public records open to inspection when the applicant who desires to inspect them shows that the purpose of the inspection is to vindicate some public or private right, the courts will by *mandamus* compel the inspection, on condition that the inspection be made 'under such reasonable rules and regulations as the court or officer having them in charge may impose.' Whether *mandamus* will or will not lie to compel an inspection of poll books, when it is sought simply for the gratification of curiosity without any purpose to vindicate either a private or public right, is not necessary to determine in this proceeding, as it does not present such a case. The relator claims that, by reason of his receiving a majority of the votes cast at the election, he acquired a right to the office of city marshal, and desires the inspection asked for as a means of enforcing this right."

In *Payne* v. *Staunton* (W. Va.), 46 S. E. 927, decided in 1904, it was sought to inspect the poll books of a special election, and the court held that a pecuniary interest in an individual in the act sought to be compelled by *mandamus* must exist to maintain it, that inspection is not a right vested in every person or under all circumstances, and that the person asking it must have an interest in the record or paper of which examination is sought.

In *Marsh* v. *Sanders* (1903), 34 South. 752, 110 La. 726, it was held that the right to inspect the book in which the sheriff was required to enter names of all persons paying poll taxes carried with it the right to make copies from the book, and that, while the sheriff was entitled to make reasonable rules for the orderly conduct of his office, he could not make a rule which would deny or abridge the right to inspect and make copies.

In *State ex rel.* v. *Reed*, 36 Wash. 638, 79 Pac. 306, it was held that a general demand by a citizen for an inspection of "any and all books of public records" in the office of the county treasurer could not be made the basis for a writ of mandate.

In Pennsylvania, it has been held that, in the absence of legislation, records, although public in their nature, are not open to inspection except to those who have a definite interest in them. (*Owens* v. *Woolridge*, 8 Pa. Dist. R. 305.)

In *Herbert* v. *Ashburner*, 1 Wils. 297, the court said that the books of the sessions of the corporation of Kendale were public, and that everybody had a right to see them, and, in *Rex* v. *Chapham*, 1 Wils. 305, that the books of the poor's rates were public and ought to be delivered by one overseer to another, that all the parishioners might have access to them. It is apparent that in these cases members of the body politic had, and were deemed to have, an interest which entitled them to see these books.

In *King* v. *Shelley*, 3 Term R. 142, and *Talbot* v. *Villebeys*, M. 23 Geo. III, B. R. it was said: "That the defendant was not entitled to an inspection, for one man has no right to look into another's title deeds and records, when he has no interest in the deeds or rolls himself, as tenants of a manor have."

In *King* v. *Babb*, 3 Term R. 580, Lord Kenyon, C. J., said: "This, therefore, is like the case of an application by a stranger to the corporation. And in such a case I think we should transgress the line of our duty, if we were to grant a general unlimited inspection of all papers respecting the corporation."

Inspection of records in criminal cases was refused in *King* v. *Purnell* and *King* v. *Cornelius*, 1 Black. 27, 1 Wils. 239.

In *Sloan Filter Co.* v. *El Paso Co.* (C. C.), 117 Fed. 504, it was held that users of machines claimed to infringe a patent had such an interest in a suit between other parties in which the validity of the patent is in issue as entitled them to inspect and to have a copy of the court records. Hallett, J., said: "If strangers to the suit can be in any manner or to any extent bound by the result, they ought to be at liberty

to inquire how the controversy is carried on. At the bar it was said that this petition is without precedent. This may be true in respect to the circumstances of this case, but the matter of inspecting and taking copies of public records is as old in the law as the records are old. In English law tenants of a manor could always inspect the court rolls and books of the manor in order to ascertain their titles. (*Rex* v. *Shelley*, 3 Term R. 141.) So, also, where the authority of a mayor was in question, citizens could inspect the books and papers of the borough in order to determine the fact. (*Rex* v. *Babb*, 3 Term R. 579.) These cases and others support the common-law rule that a party may have inspection of any document or paper in which he may be interested. (1 Whart. Ev. par. 745.)"

Act Cong. Aug. 12, 1848, c. 166, 9 Stat. 292, provides that all books in the office of the clerks of the Circuit and District Courts of the United States, containing the docket of the judgments or decrees, shall, during office hours, be open to the inspection of any person desiring to examine the same without any fee or charge therefor. Act Feb. 26, 1853, c. 80, 10 Stat. 163, allows the clerk a certain fee for searching the records for judgments or decrees. Act Aug. 1, 1888, c. 729, 25 Stat. 357, provides that the indices and records of judgments, that the clerk is by that act required to keep, shall at all times be open to the inspection and examination of the public.

In *Re Chambers* (C. C.), 44 Fed. 786, it was held that these provisions secure to the citizens the right to examine these records free of charge, and the clerk is entitled to the fee only when he is required to make the search himself.

Under the acts of Congress mentioned it was held that a corporation engaged in the business of insuring titles had the right to examine the indices and cross-indices of judgments kept by the clerks of United States Circuit and District Courts, when such examination relates to current transactions, and does not interfere with the right of other persons who have access to them. (*Commonwealth Title and Trust Co.* v. *Bell* (C. C.), 105 Fed. 548, affirmed *Commonwealth Title and Trust Co.* v. *Bell*, 110 Fed. 828, 49 C. C. A. 208, affirmed

(1903) 189 U. S. 131, 47 L. Ed. 741, 23 Sup. Ct. 569.)   It was said, 49 C. C. A. 209, and 110 Fed. 829:   "We do not regard it at all material that the words 'without any fees or charges therefor' are not repeated in the act of 1888."   Under the decree the title insurance company was given no general access to the judgment indices, but simply the right of inspection and examination in particular transactions at the time current or pending.

Although the opinions in such cases as *State* v. *Donovan*, 10 N. D. 209, 86 N. W. 709, *State* v. *Cummins*, 76 Iowa, 136, 40 N. W. 124, and *Johnson* v. *Wakulla Co.*, 28 Fla. 731, 9 South. 690, cited by relator, contain statements which seem germane here, the issues in those cases were different, and did not relate to the right of inspection, nor of the recorder or officer to collect fees.   There is room for a controlling distinction between the admissibility in evidence of original or certified copies of public records, and the right to examine and copy them without charge by abstracting companies or others, without interest in the property or authority from the owners, for the purpose of duplicating the records and equipping an office in rivalry to the recorder.   Nor are *Nash* v. *Lathrop*, 142 Mass. 35, 6 N. E. 559, *Banks & Bros.* v. *West Pub. Co.* (C. C.), 27 Fed. 50, and other cases cited upholding free inspection of legislative enactments, strictly apropos. It is apparent that reasons and necessities exist for the open examination and speedy publications of laws in which all are interested, and by which all are bound, that do not prevail in regard to private titles, and uniformly the courts have allowed inspection of public laws.   Records of court proceedings concerning private affairs, the publication of which could only serve to satiate a thirst for scandal, constitute another class regarding which there are often stronger reasons for denying examination by disinterested persons, than of instruments pertaining to land. (*Burton* v. *Reynolds*, *supra; In re Caswell's Request*, 18 R. I. 835, 29 Atl. 259, 27 L. R. A. 82, 49 Am. St. Rep. 814.)   See *Colnon* v. *Orr*, 71 Cal. 43, 11 Pac. 814.

Again, there is reason for distinguishing from the case at bar that of *People* v. *Cornell*, 47 Barb. 329, reversing 32

How. Prac. 149, and the English cases cited in connection therewith, upon which so much reliance is placed. A member of a municipal corporation may have an interest, not special, but in common with others, that entitles him to inspect its records, which is quite different from what one man has in the private land titles of others, and the English cases we have mentioned, a part of which are relied upon by relator, indicate this distinction.

It is said that during the memory of us all it has been the custom in this state to allow free inspection of the records. This is undoubtedly true, but the examinations have generally been limited in their nature and made by persons having some interest in the property to serve, or by attorneys or others acting in their behalf. It has not been customary for any one to inspect, copy, or duplicate all the records in the offices of the county recorders, and, with one exception, so far as we are aware, no one but relator has ever sought this privilege in this commonwealth. From a review of the cases it is apparent that there is much conflict as to whether, under statutes such as we are seen to have relating to some records and providing for inspection by the public, or by all persons desiring, the right of examination should be limited to those having some interest, present or prospective, in the property to which the record relates, or should be freely extended to all. It may be noted that our statutes relating to the records of deeds, real estate mortgages, and most conveyances do not contain provisions for inspection which bring them under either class of these conflicting decisions. The principle involved has been befogged by many inadvertent statements of judges, but no case is found in the common law, and none in this country, which sustains the right of an abstract or title guaranty company or of an individual to copy or examine all the records relating to private land titles, excepting decisions based on statutes clearly giving that right and containing terms which do not prevail in this state.

The juridical assertions that records such as these were public and open to the inspection of all persons were in states with legislative enactments so declaring, or were in actions where inspection was denied to the owner or his

agent, or to some one claiming a common or public interest in the record, or which related to evidence or questions of public policy, or issues not involving the right to examine or copy all the records relating to lands. And, further, if it be conceded that these records are public and open to public inspection, as has been said, it may still be held that they are public only to that extent that they may be freely examined by all persons having any interest in the property affected by them, or under the ordinary rules of agency by the attorney or representative of persons so interested.

The filing and recording of documents relating to private titles is at private expense, and, although the records regarding them are public, they may not be considered so in that broad sense in which books and entries relating to elections, revenues, fees, and the acts and conduct of officials of more general concern or interest, are considered public. As regards the needs of inspection, records may be divided into four or more classes. It is most important to have free examination and speedy publication of the statutes and decisions which make the law by which the people are governed, and by which they are charged with notice in their conduct. It is also essential to the public welfare that records relating to revenues, elections, fees, and official acts generally be open to inspection. Access to the files and copies of documents relating to titles to property by persons who have, or are about to acquire, an interest, is necessary for their protection. Proceedings in civil suits are sometimes of such a scandalous nature that closed doors are justified and publicity is better suppressed.

As we have seen, where the statutes provide for inspection by all persons, unless the language was broad in allowing the taking of copies and memoranda by any one desiring, the courts have generally refused to compel the recording officer to allow the inspection of all records, and limited the examinations to those made by, or on behalf of, persons having some interest in the property, or what is generally the same thing, to current calls for abstracts or pending negotiations. Under fee bills substantially analogous to ours, and at common law, persons having an interest in the property, and

attorneys and abstracters representing them, have been allowed to examine and copy records relating to their holdings free of charge, excepting in Maryland. (*Belt* v. *Abstract Co.*, 73 Md. 289, 20 Atl. 982, 10 L. R. A. 212.) The official fees for recording are higher than the usual rates for copying, and there is no language in the fee bill which warrants the recorder in charging anything further for searches made or copies taken by others on behalf of any one having or seeking to acquire an interest in the property.

A number of common-law decisions limited the right of inspection to persons who had an interest in the property. The conflict of these with other cases is more apparent than real, for, where it was held that the records were open to the inspection of any person, they were of such a public nature that the members of the community had some interest in them in general with other citizens, and different from what one man ordinarily has in records relating to the private property of others. An examination of these English authorities, and of the expressions of the courts in this country regarding them, which agree with few exceptions, tends to the belief that at common law a party could not compel an inspection of the records relating to titles in which he had no personal or public interest. The times are changed, and these old cases are not so applicable to our present conditions, or to the rights or needs of abstracting and title guaranty companies, which are of modern origin. The most of the realty in England was held in large estates by the nobility and landed proprietors, and more frequently was retained by the owner through life and passed to the oldest son or other heirs. There was not so large a proportion of small holdings in fee, nor the activity of sales and frequency of transfer, that exist in this country.

During the crystallization of the early common law the records in England were in the official language which had been inflicted upon that country by the Cæsars, and which was not discernible to the uneducated masses or to many excepting officials and professional conveyancers. The part of that language which is still used in conveyancing, and which has come to us from the Romans through the mother

country, has been Anglicized or Americanized and is within
the ordinary knowledge of people possessing our advanced
common education.   There are other words, phrases, and
legal terms still intelligible to few excepting lawyers and
Latin scholars.   In England judgments were not a lien upon
land, and the seller of realty was required to furnish an
abstract which relieved the purchaser from the necessity of
examining the records, while the reverse is true in this
country.   (*Brown* v. *Bellows*, 4 Pick. 193; *Espy* v. *Anderson*,
14 Pa. 312; *Easton* v. *Montgomery*, 90 Cal. 313, 27 Pac. 280,
25 Am. St. Rep. 123; *In re Pearson's Estate*, 98 Cal. 613,
33 Pac. 415; *Dwight* v. *Cutler*, 3 Mich. 566, 64 Am. Dec. 105,
and cases cited.)

*Caveat emptor* being the rule with us in the absence of a
special agreement, it is just and essential to the protection
of persons intending to purchase or take incumbrances that
they be allowed the right of inspection.   Sections 2663 and
2664, before quoted, and *Grellet* v. *Heilshorn*, 4 Nev. 526,
*Wilson* v. *Wilson*, 23 Nev. 273, 45 Pac. 1009, and *McCabe* v.
*Grey*, 20 Cal. 516, charge subsequent purchasers and mort-
gagees with notice of every recorded conveyance or writing
affecting real estate, and when the statute imposes notice and
liability it must by implication extend the right of exami-
nation of the records for the protection of any who are in a
position to be injured without such inspection.   To charge
any who may sustain injury with notice of the contents of
records, and then deny free access to those contents with
which they are charged, would be an intolerable mockery in
this day and generation, comparable to that perpetrated by
the emperor who published his decrees in letters so small on
tablets posted so high that they could not be read by the
people, and punished for a disobedience of them.

We assume that there is no material dispute between the
parties here in relation to the inspection of any record, the
examination of which by the public is provided for by the
language of the statute, such as those relating to chattel
mortgages or newspapers, but the real issues are regarding
the rights of relator to examine and copy without charge all
records relating to deeds, mortgages, liens, and the titles to

realty, concerning the inspection and copying of the most of which our statutes are silent, and, secondly, pertaining to the right of relator to have free access to these, when employed by persons interested, to make searches or furnish abstracts. Relator concedes that the recorder may make proper rules for the conduct of his office. There appears to be a dispute concerning the right to inspect documents filed before they are recorded. As the statute makes these notice upon filing, they are open to examination as soon as filed, the same as records generally, and subject to the same limitations. The business of furnishing abstracts prepared by professional and expert searchers, and of guaranteeing titles, is a legitimate one and meets a want of cautious purchasers desiring to be well assured and guaranteed regarding titles. The tendency in large communities is to concentrate the service which previously was performed by attorneys and conveyancers.

Persons having or seeking to acquire an interest in property may examine the records for themselves or exercise their choice in employing an attorney or some one to search for them, or they may have the abstracting company furnish an abstract or guarantee the title; but, in the absence of any statute conferring the right, and of any common law or other decision warranting it, it is apparent that relator is not entitled to copy or examine all the records as sought by its petition. Whether changed conditions and growing demands of the community make it desirable to extend to abstract companies the privilege of copying all the records relating to titles and of duplicating all of these in the offices of the county recorders, is a question of policy and expediency for the legislature, and not for the courts to determine. The fact that the statutes provide for the inspection of some records by any person, as indicated, does not authorize us to interpolate similar provisions into other sections relating to the record of conveyances and documents affecting private titles.

It is ordered that a writ of mandate issue directing the defendant and respondent, as county recorder of Nye County, to allow the petitioner and relator, and its agents and employees, free of charge, during regular business hours, to inspect and make memoranda and copies of all files and

records in the office of the county recorder of that county, in so far as they relate to any current or depending transactions in which relator is authorized or employed to make searches, furnish abstracts, or guarantee titles, by persons owning, having any incumbrance or lien upon, or interest in, or seeking to acquire by purchase, bond, contract, attachment, execution, mortgage, lien, or incumbrance any interest in property; the examination and taking of memoranda or copies to be made at such times and under such circumstances as will not prevent the respondent or his assistants from discharging their duties, or interfere with the right of other persons to have access to the records. The privilege sought by relator, of inspecting or copying all the records for the purpose of compiling an independent set of abstract books, covering all the property to which the records relate, is denied.