PETER WEBBER AND GEORGE C. WORTH, RELATORS v. ANSON TOWNLEY, REGISTER OF DEEDS.

*Public records—Copies.*

There is no common-law right to make copies or abstracts of public records for speculative purposes, as for the compilation of a set of abstract books for selling abstracts of title. Nor is such a right given by Act 54 of 1875, "to facilitate the inspection of the records and files in the offices of the registers of deeds."

MANDAMUS. Submitted April 27. Denied June 9.

*Beakes & Cutcheon* for relators. The right to inspect public records and make transcripts therefrom is a common-law right, *Herbert v. Ashburner* 1 Wils. 295; *King*

*v. Shelley* 3 Term 141; *Rex v. Fraternity of Hostmen* 2 Strange 1223; *Harrison v. Williams* 3 B. & C. 162; *People v. Cornell* 47 Barb. 329; *State v. Williams* 41 N. J. 332: 19 Am. L. Reg. 154; Dill. Corp. §§ 240, 684–5; Ang. & Am. Corp. § 707; Grant on Corp. § 311; High Ext. Rem. § 833; 1 Greenl. Ev. §§ 471–8; *Silver v. People* 45 Ill. 225; *State v. Meadows* 1 Kan. 90; *Hawes v. White* 66 Me. 305.

*Thomas A. Wilson* and *Eugene Pringle* for respondent. Records of conveyance were formerly looked upon as partaking of both a private and public character (Greenl. Ev. §§ 474–5) inspection of which was permitted to those interested and denied to strangers, *Rex v. Allgood* 7 Term 742; Gresley Ev. 170; there is no right at common law, and the claim must be supported by private interest or by a right in the public interest, *In re McLean* 9 Cent. L. J. 425; *Rex v. Merch. Taylor Co.* 2 B. & Ad. 115; mandamus has been granted to allow copyhold tenants to inspect the manorial court rolls far enough to ascertain the condition of their own titles, but not to parties claiming no interest in the land, *Rex v. Lucas* 10 East 235; *Rex v. Tower* 4 M. & S. 162; *Rex v. Justice of Staffordshire* 6 Ad. & El. 268; *Rogers v. Jones* 4 D. & R. 484; 2 Phil. Ev. 312; mandamus to compel the clerk in charge of records to allow a person employed by the board of supervisors to make new indexes for the public use was denied, *People v. Welch* 10 Hun 535.

MARSTON, C. J.   The relators show by their petition that in November, 1879, they entered into copartnership for the purpose of making and owning a complete abstract of the title to all the lands in Jackson county, and for the purpose of carrying on the abstract business at Jackson in said county; that they had called upon the respondent, who was and is register of deeds in said county, and stated to him fully and fairly the purpose of petitioners, and asked permission to put a table in one of the rooms in the office of said register, which was

granted; that petitioners thereupon contracted for certain blank books and incurred considerable expense, and commenced copying from the public records into such books, and continued so to do until about January 15, 1880, and that this was done without the slightest interference with or hindrance to the business of the office of said register; that at the date last mentioned the respondent informed a clerk then in the employ of said relators at such work that respondent would not allow him to work any more, because it would be unfair to the owner of another set of abstract books in which respondent was interested, and that since then relators have been unable to farther prosecute their said work. The relators farther set forth that in doing such work they have not used pen or ink, or permitted their clerks to, using pencils only, and are willing to comply with all reasonable rules and regulations which the register may prescribe. They farther allege that the public records of said office embrace one hundred books of records of deeds and about sixty of records of mortgages, to be abstracted; that the making of a proper abstract will be a work of great labor, and if done by one person without assistance would require several years for completion. They allege an intention to make a complete abstract, which would be of great benefit to the public and themselves. The relators ask for a peremptory writ of mandamus to compel the register to permit them and their clerks to inspect and copy or abstract the public records, files and papers in the office of the register, subject to reasonable rules and regulations as to time, facilities, etc.

An answer was put in by the respondent to which a number of exceptions have been taken by relators' counsel, but which we shall not consider, preferring to dispose of the application upon its merits, and without any reference to side issues, assuming for this purpose that sufficient facilities could be afforded relators in the register's office to make an abstract, even although, as stated

in the answer, it would require two persons five years to make such abstract.

The relators place their right to the relief asked upon two grounds—*first*, that the right to inspect public records and make transcript therefrom is given them by the common law; *second*, under Act No. 54 of the Session Laws of 1875, p. 51.

We are of opinion that under the common law relators have not the right claimed. The right to an inspection and copy or abstract of a public record is not given indiscriminately to each and all who may, from curiosity or otherwise, desire the same, but is limited to those who have some interest therein. What this interest must be we are not called upon in the present case to determine. The question has usually arisen where the right claimed was to inspect or obtain a copy of some particular document, or those relating to a given transaction or title. We have not been referred to any authority which recognizes the right of a person under the common law to a copy or abstract of the entire records of a public office in which he had no special interest, the object in view being simply private gain from the possession and use thereof.

The object sought by the relators may be considered as of such modern origin as not to have been contemplated or covered by the common law authorities relating to the inspection of public records, and the reason upon which those authorities rest would exclude relators from the right claimed. What is the right which relators seek, and the result thereof? But first let us see what it is not. It is not for a public purpose. They do not seek these abstracts for purposes of publication for the use, benefit, or information of the public, even if such an unlimited publication could be justified. Relators do not ask for an inspection of a record and abstract thereof relating to lands in which they claim to have any title or interest, or concerning which they desire information in contemplation of acquiring

43 MICH.—68.

some right or interest, either by purchase or otherwise. It is not as the agents or attorneys of parties seeking information because interested or likely to become so. On the contrary, the right is based upon neither a present nor prospective interest in the lands, either personally or as a representative of others who have, but is for the future private gain and emolument of relators in furnishing information therefrom to third parties for a compensation then to be paid. It is a request for the law to grant them the right to inspect the record of the title to every person's land in the county, and obtain copies or abstracts thereof, to enable them hereafter, for a fee or reward, to furnish copies to such as may desire the same, whether interested or not, and irrespective of the object or motive such persons may have in view in seeking such information. In other words, relators ask the right of copying or abstracting the entire records of the county for private and speculative purposes, they having no other interest whatever therein.

Conceding to them this right under such circumstances, and the same must be accorded to all others asking it. Every resident of Jackson county may of right claim a similar privilege. Indeed, the right for such purpose, if it exists at all, cannot be restricted by the residence of the party, so that the result may be more applicants than the register's office could afford room to. Farther than this, to make such abstracts being thus open to all, and being a matter of right, must be granted in such a manner, and such reasonable facilities must be afforded, that the right claimed and exercised will not be barren but profitable. If none but the applicants are permitted to work, the time consumed in making the abstract will, in many counties, be so long that the full fruits thereof cannot be reaped during the life-time of the parties. An opportunity, therefore, should be afforded to all to have the work done within a reasonable time. If, therefore, each applicant, with a corps of assistants and clerks, makes demand upon the register for facilities to prepare

abstracts, may not that officer find his position a somewhat embarrassing one, and his office uncomfortably crowded, to his inconvenience and that of the public? If, however, this is a matter of right, open and common to all, and which may be enforced by *mandamus*, must not the proper authorities in such county furnish suitable room and facilities to accommodate all who may desire to exercise this right? If not, and there is to be any discrimination, who shall be favored—who shall be admitted and who excluded? How many clerks or assistants shall each applicant have the right to employ? Who shall determine what shall be considered a reasonable time within which each may complete his abstract? And, as the use of the public records cannot thus be handed over to the indiscriminate use of those not interested in their future preservation, how shall the register protect them from mutilation? This he cannot do personally without neglecting his official duties, and if he must employ clerks or appoint deputies for such purposes, at whose expense shall it be, the law having made no provision for such emergencies?

These and many other embarrassing questions must arise if this right is found to exist.

It would not, however, end here. This being a right which we might term one not coupled with an interest, must apply equally to the records in each and every public office. True the copies or abstracts from each of the several public offices might not be so profitable to the parties making the same as would those from the register's office, but this would not go to the right to make the abstract. May then parties in no way interested, other than as are these relators, insist upon the right to inspect and copy or abstract the records of our courts,— of the treasurers of our counties,—of the several county offices; and indeed why with equal propriety may it not be extended to a like right in each of the several State offices? The right once conceded, there is no limit to it until every public office is exhausted. The inconven-

iencies which such a system would engraft upon public officers; the dangers, both of a public and private nature, from abuses which would inevitably follow in the carrying out of such a right, are conclusive against the existence thereof.

It may be said that, even admitting the right to exist, there would be no such number of persons desirous of making abstracts, and that the dangers pointed out would not therefore arise, and in corroboration thereof the past may be referred to. How far the uncertainty of the existence of such an unlimited right in the past may have kept the number of applicants within proper bounds, may have some bearing upon the question, and it may be true that the demand for abstracts of title would have some effect upon the supply offered for sale. We must bear in mind, however, that the larger and more populous the county, the greater would be the demand, and because of the larger number of volumes of records in such a county, a correspondingly increased time and force would be required for each person to perfect his abstract, and the greater danger from abuses exist. Besides in ascertaining whether the right exists, we have a right to inquire into the evils which it would be likely to lead to, and may for this purpose follow up the natural and probable consequences likely to result therefrom, and thereby determine whether justified by the principles of the common-law decisions.

From what has been said, a very brief reference to the statute will be sufficient. The language of the act referred to does not in clear and unmistakable terms include a case like the present, and such an one should not be conferred by construction. The object of the act was to enable persons having occasion to make examination of the records for any lawful purpose,—and what would be we have already indicated,—to have suitable facilities therefor, to point out their rights and limitations therein, and the right and duty of the official custodian of the records in connection therewith. This was right

and proper, in order to define the respective rights and prevent conflict or confusion, but clearly this act does not extend to a case like the present.

It follows that the writ must be denied with costs to respondent.

The other Justices concurred.