*In re* CHAMBERS *et al.*

*(Circuit Court, D. Nebraska. January 15, 1891.)*

RECORDS OF FEDERAL COURTS—RIGHT OF EXAMINATION.

    Act Cong. Aug. 12, 1848, provides that all books in the offices of the clerks of the circuit and district courts of the United States containing the docket of the judgments or decrees of said courts shall, during office hours, be open to the inspection of any person desiring to examine the same without any fee or charge therefor. Act Feb. 26, 1853, allows the clerk a certain fee for searching the records for judgments or decrees. Act Aug. 1, 1888, provides that the indices and records of judgments that the clerk is by that act required to keep shall at all times be open to the inspection and examination of the public. *Held*, that these provisions secure to the citizens the right to examine these records free of charge, and the clerk is entitled to the fee only when he is required to make the search himself.

At Law. Petition for leave to examine court records.

The following motion was filed on the 6th day of December, 1890:

"*In the Circuit Court of the United States in Nebraska. November Term,* 1890.

"MOTION.

"Comes now the undersigned, and on behalf of the said J. M. Chambers, whose name is subscribed to the affidavit accompanying this motion, and moves the court that the clerk thereof be instructed as to the right of the public, and especially said J. M. Chambers, to make inspection and examination of the indices and records authorized and prepared by authority of the act of congress approved August, A. D. 1888, and accompanying this motion, and support the same, by the petition and affidavit hereto attached, and made a part of this motion.     J. H. MACOMBER, Atty. at Law."

The petition and affidavit filed with and made part of the motion are as follows:

"PETITION.

"*To the Honorable Judges of the Federal Courts of Omaha, Nebraska:* We, the undersigned, being interested in the right to examine the indices for judgments in the district and circuit courts of the United States for the district of Nebraska, would respectfully ask the judges of said courts to instruct the clerks of said courts as to the right of the public to inspect the same free of charge.

"J. M. CHAMBERS, Abstractor, 923 New York Life Bldg.

"JOHN PALMYUIT, Abstractor, 913 New York Life Bldg.

"JOHN P. BREEN, Atty.

"DEXTER L. THOMAS, Atty. I have been refused the right to examine judgment index and shown order from Atty. Genl. Garland.

"CHAS. A. GOSS, Atty. at Law.

"C. F. HARRISON.

"W. W. SLABAUGH.

"GEO. J. PANE.

"C. K. COLLIERS, Secy. Home Investment Co.

"J. W. WEST.

"FRANK HELLER.

"T. J. TOOLEY.

"OMAHA ABSTRACT COMPANY, by HERBERT H. NEALE, Secy.

"H. E. HAND.

"F. E. ALEXANDER.

"CHAS. C. KNEESLY, Secy. Provident Savings Loan and Building Assn.

"R. S. ERON, Atty.

"F. L. RICE.

"A. BRANTLY.

"L. S. SKINNER.

"R. W. RICHARDSON, Atty. at Law.

"H. B. IVEY, Loan and Real Estate Broker.

"JNO. W. ROBBINS, of Hartman and Robbins, (Real Estate.)

"SECURITY ABSTRACT COMPANY, by E. F. SEAVER, Secy.

"OMAHA TITLE INDEMNITY & TRUST CO., by J. W. HARRIS, Secy.

"S. SCHLESINGER.

"W. E. GRATTON.

"*Omaha, Nebraska,* Dec. 4, 1890."

### "AFFIDAVIT.

#### "*State of Nebraska, Douglass County.*

"I, J. M. Chambers, being duly sworn, depose and say that I am an abstractor of titles, having an office in Omaha, Neb. That I have constant occasion to inspect and examine the indices and records of the courts of the United States, prepared and authorized by the act of congress approved August 1, 1888, entitled 'An act to regulate the liens of judgments and decrees of the United States.' That I understand and believe that the provision of said act in section 2 thereof authorizes and allows that 'such indices and records shall at all times be open to the inspection and examination of the public.' That the clerks of the courts of the United States at Omaha require the payment of a fee from the public to allow said public to make such inspection and examination for themselves. I further state that such fee is required and demanded by said clerks as a matter of right, but, as your affiant believes, is without warrant of law, and contrary to said act approved August 1, 1888. That the names attached to the petition accompanying this affidavit are of persons, companies, and corporations situated and resident in Omaha. That this application is made in good faith, on my own behalf and others, for the purposes of the said petition. That I am forbidden, without fee, to make inspection and examination of the said indices and records by the said clerks. That I desire, in the utmost good faith, that the said clerks should be instructed as to the law and right of the matter.          J. M. CHAMBERS.

"Subscribed in my presence, and sworn to before me, this 5th day of December, A. D. 1890.

[Seal.]                              "SILAS ROBBINS, Notary Public."

CALDWELL, J.   It will be observed that the petitioners do not seek an order authorizing the inspection and examination, by the public or themselves, of all the records in the clerk's office, but only those specifically mentioned in the second section of the act of congress of August 1, 1888, (25 U. S. St. 357.) They are the indices and cross-indices to the judgment records of the court and the judgment records themselves. Taking them in their chronological order, the acts of congress which re-

quire consideration in the determination of the question raised by this petition are as follows:

Act of August 12, 1848, (9 U. S. St. c. 166, p. 292,) which provides—

"That all books in the offices of the clerks of the circuit and district courts of the United States containing the docket or minute of the judgments or decrees of said courts shall, during office hours, be open to the inspection of any person desiring to examine the same, without any fee or charge therefor."

The act of February 26, 1853, (10 U. S. St. c. 80, p. 163,) fixed the clerk's fees. Among its provisions were the following:

"For every search for any particular mortgage, judgment, or other lien, fifteen cents. * * * For searching the records of the court for judgments, decrees, and other instruments constituting a general lien upon real estate, and certifying the result of such search, fifteen cents for each person against whom such search is required to be made."

All the foregoing provisions, with others, are embodied in section 828 of the Revised Statutes of the United States. The second section of the act "To regulate the liens of judgments and decrees of the courts of the United States" (25 U. S. St. c. 729, p. 357) declares—.

"That the clerks of the several courts of the United States shall prepare and keep in their respective offices complete and convenient indices and cross-indices of the judgment records of said courts, and such indices and records shall at all times be open to the inspection and examination of the public."

The act of 1848, which now constitutes the last clause of section 828, Rev. St., declares the particular records in question "shall, during office hours, be open to the inspection of any person desiring to examine the same, without any fees or charge therefor;" and the later act of 1888 declares that the indices and cross-indices of the judgment records "shall at all times be open to the inspection and examination of the public." The language of these statutes is peremptory and authoritative. Their plain meaning and legal effect are in no manner limited, restricted, or affected by the provisions relating to the fees of the clerk for searches. If the citizen "requires" the clerk to make the search, instead of making it for himself, the clerk is then entitled for his services to the fees fixed by the statute. He is only entitled to fees when he earns them. He cannot charge the citizen fees for the privilege of doing for himself what the statute in terms says he may do "without any fee or charge therefor." The fee does not attach to a search by whomsoever made, but only to a search made by the clerk. The statute fixes "the clerk's fees for searching the records" at "fifteen cents for each person against whom such search is required to be made;" and it is only when he is "required" to make, and makes, the search that he is entitled to the fee. If the clerk was entitled to the fee of 15 cents for each name searched for by the citizen, then he would have the right to compel the citizen to disclose the number of names he looked for, if not the names themselves. The law has not invested the clerk with any such inquisitorial powers. To compel the citizen to disclose such facts might imperil important business interests, or injuriously affect the credit of the persons named.

Independently of the act of 1848, the act of 1888 confers on the petitioners the right they claim. That act deals with the liens of judgments in the United States courts. It takes cognizance of the great importance to the public of having complete and accurate indexes to the records of judgments in these courts, and of affording to the public free and ready access to the same. To that end it declares the clerk "shall prepare and keep" in his office these records, and that they "shall at all times be open to the inspection and examination of the public." The terms of this statute are such as to preclude discussion or debate. It puts it out of the power of either the clerk or the court to deny to a citizen the right, freely, and without charge, to inspect and examine the records mentioned. No toll can be levied on the citizen for that privilege. It must not be forgotten that these are public records, made by the authority and direction of the United States whose property they are, and that they are kept in a public office, by a public officer, for public purposes. The law creating them was not a revenue measure, nor are they made and kept as a source of revenue to the United States, nor for the private gain of the clerk. If the clerk is "required" by the citizen to search them, he is entitled to the prescribed fee for his services; but he cannot reap where he has bestowed no labor.

The question raised by this petition was decided in *Re McLean*, 9 Cent. Law J., 425. In that case a corporation publishing a newspaper petitioned the court to instruct the clerk to allow its reporter to inspect the fee-books and all other records of the court. The clerk demurred to the petition. In its ruling upon the demurrer the court expressed the opinion that the reporter was not entitled, as a matter of right, to inspect all the records of the court, but that he was legally entitled to inspect the records which the petitioners in this case claim the right to examine. The court said:

"The right to examine certain records and papers does exist. It exists as to the books containing the docket or minute entries of the judgments and decrees of the court, and these the petitioners allege that they have been refused by an officer of this court."

—And the demurrer to the petition was overruled on the ground that the petitioner had the right to examine these records. While it was said the right to inspect the other records of the court did not exist, the court was probably not very well satisfied on that point, for, on further consideration of the case, it decided to grant, *ex gratia*, the whole prayer of the petition, and gave the reporter leave to examine all the records.

The right claimed by the petitioners is secured to them by statute, and it is not, therefore, material in this case to inquire what the common law was on the subject of the right of the public to examine the court records. If it was material to inquire into the common law on the question, it would probably be found to shed very little light on the subject for several reasons. At common law the court records were written in the "ancient and immutable court-hand," in a dead language, which few besides the officers of the court could read; and this method of keeping the records, which practically made them sealed books to the public,

continued down to the reign of George II., and at common law judgments were not liens on lands, and the necessity that now exists for examining the records had no existence then. But it is said that, while natural persons may have this right corporations have not, because they are neither "persons" nor any part of the "public," within the meaning of these words in the acts of congress relating to court records. Business pursuits of all kinds are now largely conducted by corporations. They. sell goods, lend money, furnish abstracts of title, and carry on many other pursuits, which make it necessary for them to be constantly advised of the contents of the judgment-records in the courts. A corporation must act by its officers or agents, who are citizens, and no citizen loses any of his rights as a citizen because he is a member of, or an agent for, a corporation; and he has a right to search the record for his own information, or as agent for another, and with a view of imparting the information he acquires to his principal, be that principal a natural person or a corporation.

The wear and tear of the records incident to the legitimate public use of them is no concern of the clerk or the court. When worn out in a use to which they are dedicated by congress, that body will doubtless make provision for renewing them, as has often been done before. It is said the public use of the records may result in their alteration or mutilation, but this cannot be received as an argument against such use, because it is a use to which they are devoted by the act of congress. Besides, as they are mere indexes and abstracts of judgments, made up from the journal entries, no alteration or mutilation of them would affect the integrity of the original entries.

It is due to the clerk to say that he has no pecuniary interest in this question, because the receipts of his office exceed the maximum compensation allowed him by law by a sum greater than the fees derived from this source. His action in this matter conformed to the opinion and instructions of Attorney General Garland, who, in a letter addressed to the clerk of the district court of this district, bearing date November 10, 1888, says:

"For every judgment record examined, section 828 directs a charge of fifteen cents, whether the search is made by the clerk or a private individual. The fee attaches to the fact of a search. The act of August 1, 1888, only facilitates the method of search. You will continue to collect the charge as heretofore. * * *"

But the court holds the fee attaches, not to the fact of a search, but to the fact that such search is made by the clerk on the requisition of another. It is a compensation for his services in actually making the search.

The court has been furnished with the copy of a bill and the decree in a cause in the circuit court of the United States for the district of Indiana at Indianapolis. The bill was filed in the name of the United States against a firm alleged to be engaged in the abstract business, and averred that it was the duty of the clerk to make and certify all searches, and that the United States had an interest in having the clerk do the

work, and in preventing any one else from doing it, because from the fees for searches the United States was enabled to pay in part the expenses of the clerk's office and the compensation of the clerk, and that the fees were provided for that purpose; that the defendants had obtained copies of the records of the judgments and decrees, and the indexes to the same, and were using the same "in their business of abstracting and certifying to the titles to real estate," thereby enabling "persons to procure searches to be made of the records of said court without obtaining the same from the clerk thereof, as they otherwise would be compelled to do," and prayed that the defendants be enjoined from using their copies of the records in their business of investigating and certifying to titles, and there was a decree in accordance with the prayer of the bill. The case is said to have been fully argued, but no opinion was filed, and the decree recites that the cause was heard upon "the bill of complaint and the decree *pro confesso*." No opinion having been filed, the reasoning and authorities upon which the court grounded its decision can only be conjectured. In the absence of clear and controlling authorities, the court is unable to yield its assent to the conclusion reached in that case. A decree rendered by confession cannot be accepted as settling the law for any other case; but, conceding the decree to have been rightly rendered on the law as it then stood, it has no bearing on the case at bar, since it was rendered two years before the passage of the act of 1888.

The theory of the bill and the decree is that the government fixed the clerk's fee for searches at 15 cents for each name as a means of revenue to aid in the support of the government, and that it is therefore entitled to a monopoly of the business, and that persons who lawfully obtain copies of the judgment records, and the indexes to the same, cannot use them in their business of abstracting and certifying to titles, but that every citizen of the state who desires any information with reference to judgments in a United States court must apply directly to the clerk of that court, and pay him for searching for the same. All monopolies are odious, and English history does not furnish an example of one more odious in principle and vexatious in practice than that sought to be established by the bill in that case. Congress never contemplated the establishment of any such monopoly in this business, either for the benefit of the government or the clerk. The acts of 1848 and 1888 are antimonopoly acts, and took away from the government and the clerk all possible claim to the exclusive privilege of searching these records, and selling the information they contain. The monopoly of authority in business affairs is in every instance, and in every degree, an evil which can only be established by clear and positive legislation. It will never be presumed nor inferred from a statute capable of any other construction. The decisions on the right of the citizen and abstract companies to inspect and copy the records of the state courts, under the varying statutes of the states, are somewhat conflicting, but it is believed that there would have been no division of opinion on the subject if the state statutes had been as comprehensive and mandatory in their terms as the

statutes of the United States. The statutes in Michigan, Wisconsin, New Jersey, Minnesota, and New York are held to confer the right. *Burton* v. *Tuite,* 78 Mich. 363, 44 N. W. Rep. 282, 29 Amer. Law Reg. (N. S.) 49, and note, (overruling *Webber* v. *Townley,* 43 Mich. 534, 5 N. W. Rep. 971;) *Hanson* v. *Eichstaedt,* 69 Wis. 538, 35 N. W. Rep. 30; *Lum* v. *McCarty,* 39 N. J. Law, 287, (overruling *Flemming* v. *Clerk of Hudson Co.,* 30 N. J. Law, 280;) *State* v. *Rachac,* 37 Minn. 372, 35 N. W. Rep. 7; *People* v. *Richards,* 99 N. Y. 620, 1 N. E. Rep. 258; *People* v. *Reilly,* 38 Hun. 429; *People* v. *Cornell,* 47 Barb. 329. Under the statutes in the states of Kansas, Alabama, Georgia, Colorado, and Maryland the right is denied or qualified. *Cormack* v. *Wolcott,* 37 Kan. 391, 15 Pac. Rep. 245; *Boylan* v. *Warren,* 39 Kan. 301, 18 Pac. Rep. 174; *Randolph* v. *State,* 82 Ala. 527, 2 South. Rep. 714; *Buck* v. *Collins,* 51 Ga. 391; *Bean* v. *People,* 7 Colo. 200, 2 Pac. Rep. 909; *Belt* v. *Abstract Co.,* (Ct. App. Md. 1890,) 20 Atl. Rep. 982, 30 Amer. Law Reg. 56, and note.

It is proper to say that the court has been at some pains to ascertain the views entertained and the practice that prevailed in this matter in other circuits and districts. Inquiries for this purpose extended to four circuits besides the eighth, and the replies showed a substantial *consensus* of opinion and practice in harmony with the views here expressed. The clerks of the several circuit courts in this circuit will conform, in the administration of their offices, to the views expressed in this opinion. For the proper practice and fees where the clerk is required to make the search, see *In Re Woodbury,* 7 Fed. Rep. 705, 17 Blatchf. 517.

This court has no jurisdiction over the clerk of the district court, and so much of the petition as prays for an order on that officer is dismissed. If the petitioners desire any relief against the practice that prevails in the office of the clerk of that court, they must apply to that court.