THE CHICAGO TITLE AND TRUST COMPANY, Appellant, *vs.* JEROME J. DANFORTH *et al.* Appellees.

*Opinion filed October 26, 1908—Rehearing denied Dec. 2, 1908.*

1. RECORDS—*act of June 16, 1887, creates no new office.* The act of June 16, 1887, requiring the recorder in a county electing that officer separately, to keep abstract books, does not create a new office but merely adds the duty of keeping abstract books to the previous duties of the recorder.

2. SAME—*abstract book kept by recorder may be inspected and used by the public.* The act of May 31, 1887, extends the common law right to inspect records and take memoranda therefrom to other persons than those having a special interest, and by that act said right may be exercised by all persons, and the same extends to all public records required by law to be kept by the recorder, including the one known as the "Abstract Book."

3. SAME—*limitations upon right to examine records.* The right to inspect records and make memoranda therefrom is limited to such books as the recorder is required by law to keep, and must be exercised subject to such reasonable regulations as the recorder may make for the orderly government of his office.

CARTER, J., specially concurring.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

The Chicago Title and Trust Company, in its capacity of a tax-payer of Cook county, filed a bill against Jerome J. Danforth, the Abstract Construction Company, the Real Estate Title and Trust Company, Abel Davis, as recorder of Cook county, and the county of Cook, to enjoin the three first named defendants from copying the abstract books or tract indices belonging to Cook county, and to enjoin the last named two defendants from permitting the other defendants to make any such copies, either verbatim or substantial. The bill also prayed for a return to the county of Cook of all such copies of said books as may have been made, and for an accounting for any compensation that may have been received for the making of abstracts of title from the copies of the abstract books or tract indices which may have wrongfully come into the hands of the three defendants first above named. All of the defendants below, other than the county of Cook and the recorder, filed a general demurrer to the bill in its amended form, which was sustained by the circuit court and the bill dismissed for want of equity. The recorder and Cook county answered the bill. The former admits all of the allegations of the bill and joins in the prayer for relief, and the latter by its answer admits the substance of the bill but denies that the complainant is entitled to any relief. Upon an appeal from a decree dismissing the bill for want of equity the Appellate Court for the First District affirmed the decree below. This appeal is prosecuted by the complainant below from the judgment of affirmance in the Appellate Court.

From the averments of the amended bill it appears that the recorder of Cook county caused to be made, at the expense of the county, a set of abstract books, and that the recorder used such abstract books in supplying the public with abstracts of land titles in that county, in accordance with the provisions of and for the compensation provided in "An act to authorize recorders of deeds in counties where recorders of deeds are elected to keep abstract books, make

abstracts and fixing the fees and compensation therefor," approved June 16, 1887, in force July 1, 1887. The bill sets out in detail when and how these abstract books were made and the cost of the same to the county. It appears further from the bill that the Abstract Construction Company is a corporation organized in 1904, with a capital stock of $200,000, and that Jerome J. Danforth is president of said company; that said company has been engaged in copying the abstract books for something over a year; that a short time before the filing of the bill the Real Estate Title and Trust Company, another corporation, was organized with a capital stock of $1,000,000, and that the Abstract Construction Company has assigned and transferred to the Real Estate Title and Trust Company all of the abstract books, tract indices and other information which had been compiled by the Abstract Construction Company from the abstract books belonging to Cook county.

The bill is framed on the theory that a private person or corporation engaged in the abstract business has no legal right to copy the abstract books belonging to the county for the purpose of making and selling abstracts to its customers in competition with the recorder. Appellant's contention is, that the abstract books are a species of public property, and that the copying of such books by a private abstract company for use in its business is such a misappropriation of public property as will give a tax-payer standing in a court of equity to prevent by injunction. Appellees' contention is that the abstract books are public records, and that any person has the legal right to inspect such records and make copies or memoranda thereof, and that, conceding that the books themselves are public property, the mere making of copies from the books is not in any sense an appropriation of the property itself; and finally, appellees contend that appellant has no such interest, by virtue of being a tax-payer, as will enable it to maintain this bill.

HARRISON B. RILEY, and CHARLES L. BARTLETT, (WILSON, MOORE & MCILVAINE, of counsel,) for appellant.

DARROW, MASTERS & WILSON, KRAUS, ALSCHULER & HOLDEN, and CHARLES T. FARSON, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The labor of the court has been greatly increased in this case by the unnecessary length of the briefs counsel have seen fit to file. There are no questions of fact involved and the questions of law are not more difficult than the majority of questions with which this court is required to deal, yet appellant has filed a brief of more than two hundred pages and appellees have filed one equally as large. In addition to the main briefs, appellant has filed a reply brief consisting of seventy-seven pages, which is largely made up of a mere reiteration of what is contained in its main brief. Thorough and painstaking investigation is in all cases to be encouraged and commended, and when properly and intelligently carried on it ought to result in the elimination of collateral and immaterial matters and the presentation of the controlling questions involved so clearly that they can be readily decided. The mistake counsel in this case have made is in attempting to make a compilation of all the law that can be found upon the subjects treated. The result of their efforts is that they have gotten together the material out of which proper briefs and arguments might have been constructed, leaving the court to cull, out of the nearly five hundred pages of printed matter, such arguments and authorities as are helpful in determining the question involved. If the briefs in this case had been limited to one-third their length they would have been more useful and less burdensome to the court.

The principal question presented in this record is the proper construction to be given to the statutes passed in 1887 in relation to the keeping of abstract books by record-

ers. Before coming directly to the acts of 1887 it is important to have before us the state of the law prior to the enactments in question.

In the revision of our statutes of 1874 the legislature passed an act to revise the law in relation to recorders, section 12 of which provided that the recorder shall keep an entry book, a grantors' index, a grantees' index, and an index to each book of records. The fifth clause of said section 12 reads as follows: "When required by the county board, an abstract book, which shall show by tracts every conveyance or encumbrance recorded, the date of the instrument, time of filing the same, the book and page where the same is recorded; which book shall be so kept as to show a true chain of title to each tract and the encumbrances thereon, as shown by the records of his office." It will be noted that there are several defects in clause 5 above quoted, the most important of which is that the statute only authorizes the keeping of abstract books showing a chain of title as "shown by the records of his office." The act made no provision for keeping any records of judgment liens, execution and tax sales, and other judicial proceedings, which are essential to a complete abstract. The act not only failed to define the duties and fix the compensation for the performance thereof, but it left the right of the public to inspect and use such books to be determined without the aid of legislation.

These defects in the law of 1874 no doubt led the legislature in 1887 to pass an act entitled "An act to amend the act of 1874 by adding thereto another section," which is found as section 21 of chapter 115 of Hurd's Revised Statutes of 1905, and is as follows: "All records, indices, abstract and other books kept in the office of any recorder, and all instruments filed for record therein shall, during office hours, be open for public inspection and examination; and all persons shall have free access for inspection and examination to such records, indices, books and instruments,

which the recorders shall be bound to exhibit to those who
wish to inspect or examine the same; and all persons shall
have the right to take memoranda and abstracts thereof
without fee or reward." The above act was approved May
31, 1887, and in force July 1, 1887.

At the same session of the legislature another act was
passed, entitled "An act to authorize recorders of deeds in
counties where recorders of deeds are elected to keep ab-
stract books to make abstracts of title, and fixing the fees
and compensation therefor," which was approved June 16,
1887, and in force July 1, 1887. This act makes it the duty
of the recorder, in a county where the recorder is elected,
to keep abstract books showing all conveyances and encum-
brances and judicial proceedings affecting the title to real
estate, indices to tax sale books, forfeiture records, and, in
short, a complete set of books so as to enable the recorder to
furnish perfect abstracts of title to real estate. The act fixes
the fees that the recorder shall charge for abstracts, and
requires him to give a bond in the sum of $20,000, condi-
tioned to secure the accuracy and correctness of any and
all such abstracts as he might make, to indemnify any and
all persons purchasing abstracts from the recorder for loss
or damage which they might sustain by reason of any er-
rors, mistakes or omissions in such abstracts. A proviso
was added to section 1 of this act, as follows: *"Provided,*
that nothing in this act shall be construed to empower the
recorder to prevent the public from examining and taking
memoranda from all records and instruments filed for rec-
ord, indexes and other books in his official custody, but
it shall be his duty at all times, when his office is or is re-
quired by law to be open, to allow all persons without fee
or reward to examine and take memoranda from the same."
This act was amended in 1903 by the addition of two new
sections, one of which reduced the amount of the bond re-
quired to be given by the recorder from $20,000 to $10,000,
and provided that the bond was to be for the indemnity of

the county, to reimburse the county for any loss or damage which the county might be required to pay by reason of errors or omissions of the recorder in any abstract that he might make. This section made the county liable directly to parties injured or damaged through errors, mistakes or omissions of the recorder in making abstracts. The other added section provided for setting apart five per cent of all fees received by the recorder for abstracts in a special indemnity fund until such fund should reach the sum of $100,000, when the payments thereto were to be reduced to two and one-half per cent and continue at the rate of two and one-half per cent as long as said fund remained $100,- 000 or more, and whenever it should fall below said sum the payments at the rate of five per cent should be resumed. This fund was required to be paid to the county treasurer, who was to invest such fund in United States, State, county or municipal bonds and report annually the amount of interest received, and it was provided that said fund should be held to satisfy judgments obtained against the county for loss or damage, as aforesaid, and the payment thereof was to be made only upon the order of the county board.

The main contention of the parties is whether, under the law, a private abstract company has the right to make up a set of abstract books from the data obtained from the abstract books of the recorder. In the view that we take of this controversy it is not necessary to resort to common law authorities or analogies, since it is one to be determined exclusively under the statutes above referred to. In the outset it is to be observed that the act of June 16, 1887, does not attempt to create a new office, but the duty in relation to keeping abstract books and making abstracts of title is added to the duties of the recorder. Original abstract books, whether made by the recorder or by a private individual, must be made from an examination of the original records kept in the various public offices in the county.

Appellant admits, both in its bill and briefs, that any private person or corporation desiring to do so may make a set of abstract books from the original sources of information. In its bill appellant avers that "it is perfectly practicable to make up from the records of instruments, and court and other records, a complete set of such abstract books or tract indices in the same manner and by the same methods that the said recorder's abstract books have been made up, and every subsisting set of such abstract books or tract indices, whether in public or private hands, excepting those of defendants hereinafter named, have been so made up." It is conceded that the expense of making up a set of abstract books from the original sources of information would be five times the amount that it would cost to make such abstract books from the compiled data of the records. The supposed injury which is sought to be prevented by the injunction is the loss to the county in revenue which may result from competition if appellees are permitted to go into the abstract business with books made by copying those kept by the recorder. The logic of appellant's contention is that the recorder should enjoy a monopoly of the abstract business in Cook county, excepting in so far as his competitors might divide the business by the use of books made from the original records. There is no averment in the bill from which it may be assumed that if appellees are enjoined from the use of the abstract books they will not resort to the original records and make such abstract books therefrom. In fact, the bill shows that there are other sets of abstract books, whether few or many, that are in use in Cook county and have thus been made from the original records. Presumably the only effect of granting the injunction in this case would be to compel appellees to resort to the original records instead of the abstract books for their material. The increased cost of compiling abstract books from the original records which is suggested in the bill would have no effect upon the competition with

236—36

the recorder's office after such books were completed. If it had any effect it would tend to increase the efforts of such competing abstract company, for the reason, upon appellant's showing here, it would have five times as much capital invested in its abstract plant and therefore under the necessity of doing a larger business in order to make a profit. If appellant desired to increase the revenue of the recorder's office for the making of abstracts, then logically it ought to file a bill to enjoin all persons from making abstract books from the original records. If such a bill could be maintained then the monopoly of the recorder would ultimately become complete and that office would have entire control over the business of furnishing all abstracts of title, but, confessedly, this cannot be done. The right of any person to inspect and make memoranda from the original records with a view of engaging in the furnishing of abstracts of title for compensation is, as already indicated, an admitted fact upon the record of this case. Is there, then, any warrant in law for discriminating between the public records which the recorder keeps in connection with his abstract business, and the original records from which these books were made?

Until the passage of the act of May 31, 1887, there was no statute purporting to give any person the right to examine any of the records in the recorder's office. The right existing prior to that time was only the right guaranteed by the common law. The extent and limitation of this right is not involved here. The act above referred to provides that *"all records,* indices, abstract and *other books* kept in the office of any recorder, and all instruments filed for record therein, * * * the recorders shall be bound to exhibit to those who wish to inspect or examine the same; and all persons shall have the right to take memoranda and abstracts thereof, without fee or reward." This statute enlarged the common law right by extending it to all persons, regardless of whether such persons had a special interest

which was required as a basis of the right at common law. It will be noted that by this statute the right to inspect, examine and take memoranda and abstracts therefrom extends to all the public records in the recorder's office, including the abstract and other books. We are wholly unable to differentiate between the right to inspect and examine and take memoranda and abstracts from abstract books and other records required by law to be kept in the recorder's office. There is as much reason for granting the one as the other, and we are unable to see how it can be said, as appellant contends, that the law will freely permit the inspection and examination of all public records kept by the recorder .save and except only one particular record known as the abstract book, and yet such appears to be the logic of appellant's bill.

The right to inspect records and make memoranda therefrom is limited to such records as the recorder is required by law to keep, and as to these the right must necessarily be exercised subject to such reasonable regulations as the recorder sees proper to make for the orderly government of his office. There is no charge that appellees are not conforming to such regulations, if any have been made. In the view that we take of this case, appellees are simply exercising the rights which they have under the statute of May 31, 1887, and the proviso in the act of June 16. This view of the case renders it wholly unnecessary to discuss the right of appellant, in its capacity of tax-payer, to file this bill. On this question we do not find it necessary to express any opinion.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTER, specially concurring: I concur in the conclusion but not in all that is said in the opinion.