## TOBIN v. KNAGGS.

### No. 10196.

Court of Civil Appeals of Texas. San Antonio.

June 9, 1937.

Rehearing Denied July 7, 1937.

George S. Rice, Jr., and Eskridge & Groce, all of San Antonio, for appellant.

John W. Willson, of Cotulla, and Johnson & Long, of Carrizo Springs, for appellee.

SMITH, Chief Justice.

Appellant, Edgar Tobin, a citizen of Texas, brought this action against appellee, A. U. Knaggs, individually and as county clerk of LaSalle county, to compel appellee, by mandamus, to permit appellant to make copies of the records in the office of the county clerk of said county.

Appellant has correctly stated the case in his brief, as follows:

"Appellant's petition alleged in substance: That he was the possessor of equipment for the making of photographic copies of records, documents, books, etc., and was desirous of making copies of the deed records and other records in the office of the county clerk of LaSalle county, Texas, but that he had been unlawfully deprived of his right so to do by the appellee; that the apparatus with which the work was proposed to be done was not unreasonable in size, occupying approximately the same amount of space customarily required by one person making copies of records with the typewriter; and that only one man was required to operate the apparatus, and that such work could be done in the office of the county clerk without removing any books or records from such office; that the books were not required to be unbound but were merely to be placed in front of the camera as they would be placed in front of an ordinary typist, and that there was no more danger of damage to the records in this process than in any other process known for the making of copies of official records; that the estimated time required to make such copies was five weeks; that copies so made of the records in the county clerk's office in LaSalle county could be stored in a space not greater than two feet square and three feet deep and would comprise a copy of the records of such county for several hundred years, in case the originals of such records should be damaged or destroyed by fire, water or any other hazard.

"Appellant further alleged that all of these facts were fully explained to the appellee, and that appellant offered to do the work at reasonable times during normal office hours and to pay any incidental expense that might be incurred, if any, including a reasonable compensation for an additional deputy county clerk, if appellee considered the services of such additional deputy in any way advisable; that appellant assured appellee that the proposed work would in no manner disrupt the routine of the appellee's work, and appellant offered to conform to any reasonable suggestion which the appellee might make in carrying out such work; but that appellee refused to allow appellant access to the records in the office of the county clerk for such purposes without ascribing any reasons whatsoever for such refusal. Appellant further alleged that as a citizen

he was accorded by statute the right to make copies of the records in the office of appellee and that there was no adequate remedy at law of enforcing such right, and that unless the writ of mandamus issue, he would be irreparably injured and denied his legal rights.

"The appellee answered by general demurrer and special exceptions, which were overruled, general denial, and the following special defenses: That the method of copying proposed by appellant was unusual and would create a nuisance in appellee's office and interfere with and interrupt the duties of appellee; that the method of copying proposed would, perhaps, damage the records; that the appellant did not show any legal right, interest or purpose in making such copies, and that such copies would not be readable and, therefore, of no practical benefit to anyone; that appellant proposed to make copies of all the records in appellee's office and that it would unnecessarily interfere with the time and duties of appellee. * * * That the proposed copying of appellant would reduce the emoluments of his office in that the number of certified copies of records for which he could charge a fee might be decreased."

It is further stated in appellant's brief, that:

"The record shows without dispute that the appellant, a citizen of Texas, desired to make copies with certain photographic apparatus of the records in the office of the county clerk of LaSalle county. Representatives of appellant contacted the county clerk, appellee, on several occasions, explaining to him the nature of the method of making the copies, assuring him that no damage would result to the records by reason of such copying, that such copying would not be a nuisance and would not interfere with the routine of his office, and offering further to bear any incidental expense, if any, which might be entailed. The county clerk, appellee, refused to allow appellant to make such copies, giving at the time no reason for such refusal. On the hearing of the case, when appellee was first called as a witness, he testified that the only objection he had previously had, or then had to the appellant's making such copies was that it would be a bother and would interfere with the routine of his office. He stated that for those sole reasons he was at that time still refusing to permit such copies to be made."

Upon a hearing the trial judge denied the relief sought by Tobin, who has appealed. The judge filed his findings and conclusions, from which we quote:

"In this particular case I don't believe there is any reported case in the history of American or English Jurisprudence applicable—so we might just as well make some law.

"In the first place, no person has to tell the clerk why he wants to make a copy of a record when he goes into the county clerk's office; he does not have to show or have any particular interest in the record he desires to copy or tell anyone anything about it.

"In some of the cases I have read myself from other states the statute provides that the person wishing to make a copy of a record must have or show an interest of some sort in the particular record before being permitted to make a copy—the statute of Texas, article 1945, R.C.S., makes no such requirement.

"The court finds that the making of these photographic copies does not injure the books in any way, probably not as much injury as would be occasioned by making a copy of the record by using a typewriter; that the machine used in making the photographic copies does not increase the fire hazard, or increase the danger and makes very little noise—probably less noise than a typewriter; and that the use of such machine in the clerk's office is not a nuisance.

"Further, that the actual making of the copies is mechanical and does not inconvenience the clerk any more than the use of a typewriter and that the use of such machine in the clerk's office in making such copies, does not interrupt or disturb the clerk's office any more than a person using a typewriter.

"The only thing in this case, it seems to me gentlemen, is whether or not the wholesale copying of the clerk's records—all of them—especially the real estate records—will deprive the clerk of part of his fees of office; and in that connection with that, I am wondering which one of you lawyers would be the best to appeal this case to the Appellate Court.

"This court doesn't believe as a matter of law that the Texas statute contemplates that the county clerk's office can be practically lifted out of its sockets over night. That is my honest conviction.

"I know we are sometimes criticized for being in the oxcart stage, but sometimes I think we would be better off if we had remained in that stage. Instead, we now have this scientific way of copying records. Mr. Knaggs, the clerk, states he would have no objection to anyone coming into his office with a typewriter or with a quill pen or any other way and make copies of his records, except by photographic pictures. In the quickness and accuracy of the photographic copies lies the vice. No one could depend entirely on copies of records of a county clerk's office made by someone on a typewriter—the human equation would come in and errors would be made; nobody would be depend on a typewriter record of an entire county clerk's office, but the eye of a camera don't lie, and is the only perfect method that anybody could use to make copies of legal documents and records in the clerk's office which would be absolutely dependable, and this court thinks that if he permits the photographing of the clerk's records, that the county clerk's office would be practically moved over night—comparatively speaking—to some central point, and when that is done,—while now the purpose is to make these maps—there couldn't be a better record than the photographic record, because it is perfect, no human equation could enter, and in all probability the photographic copies could be used for a commercial purpose in the commercial world and in that event would deprive the county clerk of part of his emoluments of office. I believe that is sound law and I believe that is correct. In time to come there wouldn't be much left for the clerk to do but some filing, and if anybody wanted a record he could get a photographic copy from the central office, which would be perfect and at a cost less than that the clerk would get. Then the clerk would be deprived of part of his fees.

"If a person desired a copy of any instrument, photographic copies would certainly be perfect and he would rely on it and probably the relator would form a corporation with large capital, with authority to certify to correctness of the copies, and in that way partly destroy the fees of the clerk's office, therefore the court refuses the writ of mandamus. * * *"

■ We must sustain appellant's first, and only, proposition of law, that "Where, as in this case, a citizen of Texas desires to make copies of the records in the office of a county clerk, in a manner and under circumstances which are entirely reasonable, and such county clerk refuses to allow such citizen to make such copies, there being no discretion on the part of the clerk involved, the citizen is entitled to a writ of mandamus ordering such county clerk to permit the making of such copies, and the court below erred in refusing to issue such writ."

The case is controlled by article 1945, R.S. 1925, as follows:

"The clerk shall keep such other dockets, books and indexes as may be required by law; and all books, records and filed papers belonging to the office of county clerks shall at all reasonable times be open to the inspection and examination of any citizen, who shall have the right to make copies of the same."

It will be observed that the statute makes no exceptions among citizens therein accorded the right to "make copies" of "all books, records and filed papers belonging to the office of county clerks." The right is made available to "any citizen," without exception; that is to say, to every citizen.

■ The statute does not attempt or purport to restrict the citizen to the use of any particular method or device in making copies of the clerk's records. Legislative history, according to appellant, and not gainsaid by appellee, shows that the act was amended to include the provision now under consideration, in 1905, when typewriters were just coming into general use, and the amendment was induced or accelerated, according to recitations in the emergency clause, "on account of the great public demand and necessity of the citizens of this State to examine and obtain copies of the records, and the refusal on the part of the county and district clerks to allow such examination and copies to be made." Acts 1905, c. 81, § 2. The same history informs us that as originally introduced in the Senate the amendment provided that the citizen should have the right to make copies of the clerk's records "by typewriter or in any other manner he may choose," but that restriction was dropped from the final draft of the act, which, being silent upon the question, left the citizen to his own devices in making such copies, so long as he conforms to reasonable rules and regulations which the clerks would, of course, be authorized to set up and enforce. Had the provision restricting the means of making copies to "typewriters or in any other manner" the citizen "may choose," remained in the act as amended,

questions of construction might have followed to confuse and hinder the enforcement of the right, such as the question of whether, under the doctrine of ejusdem generis, the mention of typewriters would have the effect of restricting the phrase to mean by typewriter or similar devices, and thereby exclude the wholly different, and then unheard of, photographic method of copying records. We conclude that the statute, as amended, authorizes the citizen to make copies of the clerk's records by photography, such as the method proposed to be used by appellant in this case.

Nor does the statute restrict the right to copy records to citizens having a particular, or specific, or personal interest in the records to be copied, or any particular purpose to serve. It is objected by appellee that appellant's interest in making copies is to commercialize the same, through the making of abstracts of title, and the like. The same may be said of those making typewritten copies for like purposes, and who, according to the record, are freely permitted by appellee to exercise the right. The law would not sanction the discrimination that would result from appellee's proposed course. The plain and obvious purpose and effect of the statute is to give the right, alike to every citizen, to make copies of the records in the clerk's office, and the clerks have no discretion or power to deny that right to any citizen who agrees, as has appellant in this case, to observe all reasonable rules and regulations imposed in good faith by the clerks upon those demanding the right.

The record shows, and the learned trial court found, that appellant's method of making copies does not injure the records to be copied, "does not increase the fire hazard," or "the dangers," that it "makes very little noise," and "is not a nuisance"; that it does not "inconvenience" the clerk, or "interrupt or disturb the clerk's office"; that it is probably less objectionable in all those details than is the present universal method of copying records upon typewriters. By these findings every possible objection which appellee could legally urge against the use of appellant's process was met and eliminated from the case.

The trial court found, and based his judgment solely on the finding, that if appellant is permitted to copy the records in the clerk's office, the result will be to reduce the emoluments of that office; that appellant's method of copying is accurate—infallible—and therefore would enable appellant to sell said copies, and thereby and to that extent reduce the number of copies sold by the clerk, and cut off his fees, proportionately. We are of the opinion that those facts afford no possible legal ground for denying to appellant, a citizen of the state, a right so plainly and unequivocally and unreservedly given to him and every other citizen of the state. The office of county clerk was not created, nor is it maintained, for the private gain of persons occupying it from time to time, nor for the purpose of raising revenues, except as fees may be collected as an incident to its operation for public purposes. It is a purely public office, open alike at all times, and upon the same terms, to all members of the public, subject to such reasonable rules and regulations as may be imposed, in good faith, by the clerk. We therefore hold that the court below erred in denying, and should have granted, the relief sought by appellant. We have examined, and cite with approval, the authorities cited by appellant: Article 1945, R.S. 1925; Warvelle on Abstracts (4th Ed.) pp. 60, 65, §§ 60, 60-A; 80 A.L.R. 761; Bell v. Commonwealth, etc., Co., 189 U.S. 131, 23 S.Ct. 569, 47 L.Ed. 741; Arter v. Northwestern Mut. Life Ins. Co. (C.C.A.) 130 F. 768; Bracken v. Rosenthal (C.C.) 151 F. 136; In re Chambers (C.C.) 44 F. 786; Atlanta, etc., Co., v. Tidwell, 173 Ga. 499, 160 S.E. 620, 80 A.L.R. 735; Town of Bennington v. Booth, 101 Vt. 24, 140 A. 157, 57 A.L.R. 156; Burton v. Tuite, 78 Mich. 363, 44 N.W. 282, 7 L.R.A. 73; Chicago, etc., Co. v. Danforth, 236 Ill. 554, 86 N.E. 364, 19 L.R.A.(N.S.) 386; Direct Mail Service v. Registrar (Mass.) 5 N.E. (2d) 545; People v. Haas, 311 Ill. 164, 142 N.E. 549; Rock County v. Weirick, 143 Wis. 500, 128 N.W. 94; Shelby County v. Abstract Co., 140 Tenn. 74, 203 S.W. 339, L.R.A.1918E, 939; State v. Rachac, 37 Minn. 372, 35 N.W. 7; Bradley v. McCrabb, Dallam Dig. 504; Palacios v. Corbett (Tex. Civ.App.) 172 S.W. 777; King v. Guerra (Tex.Civ.App.) 1 S.W.(2d) 373.

The judgment is reversed and judgment here rendered that the writ of mandamus issue, as prayed for in appellant's application therefor below, directing appellee, as county clerk of LaSalle county, to allow appellant access to and to make copies of the records and papers in appellee's office by the means proposed and upon the terms requested by appellant in his said petition, subject to the rules and regulations usually enforced by appellee upon persons exer-

cising the right to make copies of said records and papers; that all costs of the litigation be taxed against appellee.