LOGAN, CHANCERY CLERK, *v.* MISSISSIPPI ABSTRACT CO.

(In Banc. February 24, 1941.)

[200 So. 716. No. 34333.]

480

Roberson & Luckett, of Clarksdale, for appellant.

James **Robertshaw** and **Thomas & Cook**, all of Green-
ville, for appellee.

Argued orally by **James Robertshaw**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

Appellee requested of appellant, the Chancery Clerk of Coahoma County, permission to make photographic copies of all the land records of that county, using for that purpose a machine called Recordak Micro-File Model D. The Clerk refused permission. Appellee filed in the Circuit Court of that county a petition praying for mandamus to the clerk to grant such permission. By agreement a jury was waived, and the case was heard by the trial judge, who, upon the pleadings and proof, ordered that the writ of mandamus issue. From that order appellant appeals.

The principal contention made here is that the clerk has the right to refuse this permission unless appellee can first show that it has some existing special interest in the records, such as present or prospective ownerhip of, or interest in, lands, or existing employment to examine the records. However, there is considerable proof and discussion in the record of the method proposed to be used by appellee. We will, therefore, consider and decide the right of, and the method proposed to be used by, appellee in this case.

1. Appellee had no special existing or prospective interest in any lands in the county, nor present employment to examine and copy the records. It desired to make the copies so that it could furnish photographs of any or all of these records, and also abstracts of such records made from these photographs, to its patrons in the future; and, also, to meet a growing demand by title insurance companies, as well as those who might have a wide-spread interest in mineral, gas or oil rights in the lands throughout the county, that accurate copies of such records be made and preserved as a protection against destruction, by fire or other causes, of all or parts of the original records.

While at common law there was no general or public right to inspect and make copies of public land records, and one seeking to do so had to possess some special interest in such records (Webber v. Townley, 43 Mich. 534, 5 N. W. 971, 38 Am. Rep. 213; State ex rel. Nev. Title Guaranty & T. Co. v. Grimes, 29 Nev. 50, 84 P. 1061, 5 L. R. A. (N. S.) 545, 124 Am. St. Rep. 883; Davis v. Abstract Constr. Co., 121 Ill. App. 121; Chicago Title & T. Co. v. Danforth, 236 Ill. 554, 86 N. E. 364, 19 L. R. A. (N. S.) 386; State ex rel. Clay County Abstr. Co. v. McCubrey, 84 Minn. 439, 87 N. W. 1126; Brewer v. Watson, 61 Ala. 310; People v. Richards, 99 N. Y. 620, 1 N. E. 258; Shelby County v. Memphis Abstr. Co., 140 Tenn. 74, 203 S. W. 339, L. R. A. 1918E, 939; Hanson v. Eichstaedt, 69 Wis. 538, 35 N. W. 30; 1 Am. Jur. 160; No. 10 Annotation 80 A. L. R. 783; Cormack v. Wolcott, 37 Kan. 391, 15 P. 245), the question is now generally controlled by statutes in the various states. Bean v. People ex rel., 7 Colo. 200, 2 P. 909; Belt v. Prince George's County Abstr. Co., 73 Md. 289, 20 A. 982, 10 L. R. A. 212.

The great majority of the cases, especially the later ones, hold that no such special interest is required. Note 80 A. L. R. 760; 1 A. J., Abstracts of Title, sec. 11; Shelby County v. Memphis Abstr. Co., supra; Tobin v. Knaggs (Tex. Civ. App. 1937), 107 S. W. (2d) 677. But some of the

cases, while holding that no such special interest need be shown, have refused to extend that right to persons desiring to make copies and abstracts of all the records for the purpose of compiling an independent set of abstract books for future use. State of Nev. ex rel. Nev. Title Guaranty & Tr. Co. v. Grimes, 29 Nev. 50, 84 P. 1061, 5 L. R. A. (N. S.) 545, 124 Am. St. Rep. 883, and cases therein cited, and notes to that case. Note 80 A. L. R. 764, and cases cited.

These cases deal with statutes in different states and frequently involve refusal to pay fees of the clerk, extra office force made necessary by such use and occupancy of office space.

The question is presented in Mississippi for the first time. Its decision depends upon our statutes, our public policy and the charter of appellee.

Section 350, Mississippi Code 1930, reads as follows: "All records and papers subject to inspection.—All the records and papers of the office of the chancery clerk shall, at all reasonable hours on business days, be subject to the inspection and examination of all citizens; and the clerk shall show to any person enquiring for it where any record or paper in his office can be found, and shall allow him access to it, and to examine it and make any copy, note, or memorandum he desires to make of it."

We have reviewed the cases from other jurisdictions. The two most helpful are Shelby County v. Memphis Abstr. Co., 140 Tenn. 74, 203 S. W. 339, L. R. A. 1918E, 939; and Tobin v. Knaggs (Tex. Civ. App. 1937), 107 S. W. (2d) 677.

In the Shelby County case the Abstract Company was a corporation under the laws of Tennessee, with authority to prepare abstracts from the books and records. It kept in the office of the register of deeds two of its employees, engaged in taking from the records notes for the preparation of abstracts to meet current demands, as well as data for a set of abstract books, from which abstracts might be made for patrons in the future. These em-

ployees occupied two desks, and about one sixteenth of the whole space of the register's office, and they worked from about 8 A. M. to 5 P. M. each business day, and during dark days availed themselves of the county's lighting system. The Abstract Company had installed a private telephone connecting the registry of deeds with its general outside office. This private wire was a great convenience to the public and to the register of deeds; and these two employees were of considerable aid to the register in checking up errors made by his clerical force. There was proof that the presence and work of these two employees of the Abstract Company did not interfere with the work of the register, or with the public in its use of the records. The county of Shelby contended that the Abstract Company had no legal right to occupy the space in the registry for the preparation of data or abstracts, except where the abstracts are to serve a present demand, and that the preparation of abstract books for prospective use is not legitimate, being for the profit of a private corporation; and demanded that the Abstract Company pay the county a reasonable sum for the facilities afforded.

This case reviewed a great many of the cases, and concluded that this Abstract Company had the right to do this work in the manner above indicated, using this language [140 Tenn. 74, 203 S. W. 341, L. R. A. 1918E, 939]: "The true right of an abstract company in this regard is not an unrestricted one. Its agents and employes must exercise the privilege by complying with such reasonable regulations as the law and the register, as custodian of the records, may prescribe."

In the Tobin case, a citizen of Texas brought an action against Knaggs, county clerk of LaSalle county, to compel the clerk by mandamus to permit the appellant, Tobin, to make photographs of all the records of that county by the use of an instrument identical with the one proposed to be used here, except that the present instrument has some improvements. The same objections made

in the case at bar were made in the Tobin case. The Texas statute was as follows: "The clerk shall keep such other dockets, books and indexes as may be required by law; and all books, records and filed papers belonging to the office of county clerks shall at all reasonable times be open to the inspection and examination of any citizen, who shall have the right to make copies of the same." Vernon's Ann. Civ. St., art. 1945.

It will be seen that the Texas statute is very similar to the Mississippi statute. This Court cited a great many authorities, and concluded that, "the plain and obvious purpose and effect of the statute is to give the right, alike to every citizen, to make copies of the records in the clerk's office, and the clerks have no discretion or power to deny that right to any citizen who agrees, as has appellant in this case, to observe all reasonable rules and regulations imposed in good faith by the clerks upon those demanding the right." [107 S. W. (2d) 680.]

Our public policy is different from that of the early English law. The greater part of the real property of England was held by the nobility and the aristocracy, in large estates, and largely retained by the owner through life, and passed to the oldest son, or other heirs, often entailed, and this resulted in few transfers. Our policy is to encourage small holdings in fee, and equality among heirs, and activity of sales, and freedom of transfers. Our statutes provide for the recording of instruments affecting titles to lands, and they charge the public with notice of such instruments, and their contents. If the public is to be charged with notice of such records, the law should be liberalized as to the right of inspection of records, and the making of copies thereof.

Appellee is a Mississippi corporation under a charter granted in 1940, with capital stock of $50,000 fully paid up, and which charter grants to it the right and power: "To own, use, make and keep a full set of abstract books and records, by which to make and compile abstracts of title and ownership maps covering the real estate in the

State of Mississippi, and in connection therewith, to make copies of public records by all means and devices; to make, compile, furnish and certify to, abstracts of title to all kinds; to certify titles to real estate under the conditions provided by law; to furnish copies of public records and to do all acts and things necessary to the making and completing of abstracts of title to real estate and showing the condition of such title, liens and encumbrances of real estate.''

A mere reading of these granted powers shows clearly that the appellee has the right to inspect and make copies of all the land records in the entire state of Mississippi, and to compile independent abstracts for future use. Denial of that right by counties would nullify the explicit powers granted it by the state.

We therefore conclude that appellee had the right to examine and make copies of the records of Coahoma county.

2. The method which appellee proposed to use is described in the helpful brief of appellant in the following language: ''The appellee proposed to make the copies of the records by using, in the office where the records were situated, a photographic machine operated by electricity. The machine was made by the Eastman Kodak Company, and its method of operation is explained by witness McClaugherty, an employee of appellee. It seems that the machine makes very little noise while being operated, even less than a typewriter. The camera is set up on a mast and can be raised or lowered as the occasion may require. The page sought to be photographed is placed under the camera. The operation is rapid, so rapid in fact that an entire volume of 640 pages can be photographed in about 30 or 35 minutes. This equipment was in court, and it or similar equipment had been used in several counties in Mississippi in photographing land records. It seems that the operation of the machine did not disturb the routine of any Clerk's office. No expense would be incurred by the Clerk of the Coun-

ty in the making of the photographic copies of the records." In addition to which, we might add, the machine was operated in the presence of the learned trial judge, and photographs of the machine set up for action are a part of the record, and that appellee offered to make a cash deposit to cover the cost of any electricity it might use, this machine being equipped with a meter which would accurately measure the electricity, or it would make arrangements for having a separate wire run to its. machine.

It is furthermore shown that the damage to the books, if any at all, would be less than that resulting from making copies by use of a typewriter; that it does not increase the fire hazard; that there is nothing disagreeable to persons in its operation, and the compensation of the clerk is in no way lessened. Also, the clerk very frankly stated in his testimony that the reason he refused the permission was because he did not know whether the word "copy" in the statute authorized making photographs of the records and he would have refused permission to make pictures of the records even with a camera. He had never seen this machine in operation.

Conditions change; new and improved devices are invented, and the law, to live and serve, must adapt itself to changing conditions, if thereby no fundamental principle is sacrificed. The word "copy" in the statute includes photographic copy. Tobin v. Knaggs, supra. Indeed, perhaps the most accurate copy which could possibly be made would be a photograph of the records. We, therefore, hold that this is a reasonable and proper method under existing conditions, to be used by appellee under authority of its charter, ". . . to make copies of public records by all means and devices."

The right and method are not unrestricted. The statute prescribes the time—"at all reasonable hours on business days." The method, in other respects, cannot interfere unduly with the use of the records by the public,

or with the clerk in the discharge of his duties, or materially lessen the compensation of the clerk. But this case is not within those restrictions.

Affirmed.